THE HONORABLE DAVID G. ESTUDILLO

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

ANGELLINA PEREZ, TABITHA DALTON, KAELA CHONG, AND CHANDLER HEISS, on behalf of themselves and all others similarly situated,

        Plaintiffs,

  v.

TORRID, LLC,

        Defendant.

Case No. 3:25-cv-06020-DGE

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

**NOTE ON MOTION CALENDAR: June 3, 2026**

**ORAL ARGUMENT REQUESTED**

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 1
Case No. 3:25-cv-06020-DGE

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND RELIEF REQUESTED..................................................1

II.  FACTUAL BACKGROUND....................................................................2

III. LEGAL STANDARD...........................................................................3

IV.  ARGUMENT.....................................................................................5

A.   Plaintiffs Do Not Plausibly Plead a CEMA Violation, Let Alone with the Required Particularity. ...................................................................5

   a.   Plaintiffs Fail to Adequately Allege Torrid Knew Plaintiffs Were Washington Residents. ...............................................6

   b.   Plaintiffs Fail to Plead that Anything in the Subject Lines Was False or Misleading.....................................................8

   c.   Plaintiffs Do Not Adequately Allege a Conspiracy. ...........10

B.   CAN-SPAM Preempts Plaintiffs' CEMA Claims and Requires Dismissal. ...................................................................................10

   1.   CAN-SPAM Exempts Only State Law Actions Based on Claims that Sound in Fraud. .......................................................12

   2.   Plaintiffs' CEMA Claims Do Not Fall Into the CAN-SPAM Exception, and Even if They Did, They are Not Pled with Particularity...................................................................13

      a.   Plaintiffs' Complaint Fails to Adequately Allege Materiality..........................................................14

      b.   Plaintiffs' Complaint Does Not Adequately Allege Reliance. ..........................................................17

      c.   Plaintiffs' Complaint Does Not Allege that Plaintiffs or Class Members Suffered Any Fraud-Based Injury............18

   3.   This Case is Distinguishable from Recent Decisions in this District and, Regardless, the Court is not bound by Those Opinions and Must Follow Virtumundo...................................................20

C.   Plaintiffs' Derivative CPA Claim Must Also be Dismissed.....................22

V.   CONCLUSION................................................................................23

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 2
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnew v. Macy's Retail Holdings, LLC*,
  2026 WL 764140 (W.D. Wash. Mar. 18, 2026) .......................................................................20

*Altria Group, Inc. v. Good*,
  555 U.S. 70 (2008)................................................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................3, 4

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
  622 F. Supp. 2d 935 (N.D. Cal. 2009) ...................................................................................12

*Asis Internet Servs. v. Vistaprint USA, Inc.*,
  617 F. Supp. 2d 989 (N.D. Cal. 2009) ...................................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................................3

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) .................................................................................................4

*BP W. Coast Prods., LLC v. Shalabi*,
  2012 WL 2277843 (W.D. Wash. June 14, 2012)....................................................................18

*Brown v. Old Navy, LLC*,
  4 Wn. 3d 580, 567 P.3d 38 (2025)..............................................................................5, 11, 22

*Brummett v. Wash. Lottery*,
  171 Wn. App. 664, 288 P.3d 48 (2012) ..................................................................................17

*Camreta v. Greene*,
  563 U.S. 692 (2011)..............................................................................................................22

*Chen v. Sur La Table, Inc.*,
  655 F. Supp. 3d 1082 (W.D. Wash. 2023), *overruled on other grounds*................................22

*Devivo v. Sheex, Inc.*,
  No. 3:25-cv-05807-DGE (filed Sep. 10, 2025) (Dkt. 28 – Order to Show
  Cause), (Dkt. 29 – Plaintiff's Response), (Dkt. 32 – Sheex's Response)................................19

*Elcon Const. Inc. v. E. Wash. Univ*, 174 Wn.2d 157, 273 P.3d 965 (2012) .................................16

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 3
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

*In re Estate of Kessler*,
   95 Wn. App. 358, 977 P.2d 591 ........................................................................................10

*Ferguson v. Quinstreet, Inc.*,
   2008 WL 3166307 (W.D. Wash. Aug. 5, 2008), *aff'd sub nom. Ferguson v.*
   *Active Response Grp.*, 348 F. App'x 255 (9th Cir. 2009).......................................................21

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ..............................................................................................4

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d at1549-53 (9th Cir. 1994) .......................................................................................9

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ...................................................................................... *passim*

*Great Pac. Sec. v. Barclays Cap., Inc.*,
   743 F. App'x 780 (9th Cir. 2018) .......................................................................................18

*Gutierrez v. Converse Inc.*,
   2024 WL 2106952 (C.D. Cal. May 2, 2024) ........................................................................7

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wn.2d 778, 719 P.2d 531 (1986)..................................................................................18

*Harbers v. Eddie Bauer*,
   415 F. Supp. 3d 999 (W.D. Wash. 2019)..............................................................................19

*Harrington v. Vineyard Vines, LLC*,
   813 F. Supp. 3d 1218 (W.D. Wash. Dec. 18, 2025), *reconsideration denied*,
   2026 WL 125134 (W.D. Wash. Jan. 16, 2026)...............................................................20, 21

*Haskins v. Symantec Corp.*,
   654 F. App'x 338 (9th Cir. 2016) .......................................................................................18

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
   754 F. Supp. 2d 1239 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir.
   2011) ...............................................................................................................................4

*Holland Furnace Co. v. Korth*,
   43 Wn. 2d 618, 262 P.2d 772 (1953).....................................................................................9

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
   162 Wn.2d 59, 170 P.3d 10 (2007).......................................................................................18

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
   2009 WL 10676391 (W.D. Wash. May 27, 2009)...................................................................18

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 4
Case No. 3:25-cv-06020-DGE

*Jerde v. BYLT LLC*,
    2026 WL 415445 (W.D. Wash. Feb. 13, 2026)....................................................................20

*Joseph v. Amazon.com, Inc.*,
    46 F. Supp. 3d 1095 (W.D. Wash. 2014)............................................................................15

*Kempf v. Fullbeauty Brands Ops. LLC*,
    2026 WL 395677 (W.D. Wash. Feb. 12, 2026)..................................................................20

*Kempf v. Washington*,
    No. 2:25-cv-01141-TSZ (W.D. Wash. Mar. 31, 2026) (Dkt. 57)......................................21

*Khan Air, LLC v. U.S. Aircraft Ins. Grp.*,
    2005 WL 2739167 (W.D. Wash. Oct. 24, 2005).................................................................15

*Kleffman v. Vonage Holdings Corp.*,
    2007 WL 1518650 (C.D. Cal. May 23, 2007) ....................................................................12

*Kousisis v. United States*,
    605 U.S. 114 (2025)............................................................................................................15

*M.G. v. Bainbridge Island Sch. Dist. #303*,
    34 Wn. App. 2d 51, 78 n.23, 566 P.3d 132 (2025)............................................................18

*Ma v. Nike*,
    --F. Supp. 3d. --, 2026 WL 100731 (Jan. 14, 2026)....................................................20, 21

*Martin v. CCH, Inc.*,
    784 F. Supp. 2d 1000 (N.D. Ill. 2011) ...............................................................................16

*Martin v. Miller*,
    24 Wn. App. 306 (1979) ...............................................................................15, 16, 17, 21

*Montes v. SPARC Group, LLC*,
    --- P.3d ---, 2026 WL 900481 (Wash. Apr. 2, 2026) ..................................................... *passim*

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 348 (4th Cir. 2006) ......................................................................................... *passim*

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) ...............................................................................................4

*Rosolowski v. Guthy-Renker LLC*,
    230 Cal. App. 4th 1403 (2014) ....................................................................................16, 17

*Scott v. Bloomingdales*,
    No. GLR-25-3661, 2026 WL 820600 (D. Md. Mar. 25, 2026)............................................9

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 5
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

*Shellenberger v. AIG WarrantyGuard, Inc.*,
   2025 WL 732874 (W.D. Wash. Feb. 3, 2025)...................................................................17

*Sneed v. Talphera, Inc.*,
   147 F.4th 1123 (9th Cir. 2025) .......................................................................................16

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th
   Cir. 2001) ...........................................................................................................................4

*Stiley v. Block*,
   130 Wn.2d 486, 925 P.2d 194 (1996)..............................................................................14

*Strum v. Exxon Co., U.S.A.*,
   15 F.3d 327 (4th Cir. 1994) ..........................................................................................4, 9

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .............................................................................................4

*Taie v. Ten Bridges LLC*,
   704 F. Supp. 3d 1147 (W.D. Wash. 2023).......................................................................22

*United States v. Carter*,
   549 F. Supp. 2d 1257 (D. Nev. 2008)................................................................................7

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
   76 F.4th 1164 (9th Cir. 2023) .........................................................................................16

*Universal Health Servs., Inc. v. United States*,
   579 U.S. 176 (2016)..........................................................................................................17

*Vess v. Ciba–Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ...........................................................................................4

*Von Allmen v. F/V Andronica*,
   2005 WL 8172226 (W.D. Wash. Dec. 16, 2005) ..............................................................20

*Washington v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
   --F. Supp. 3d --, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026) ............................................22

*Wilson v. Aerospace LLC v. Boeing Co. Inc.*,
   2025 WL 821904 ...............................................................................................................14

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...........................................................................17

*Wright v. Lyft, Inc.*,
   189 Wn. 2d 718 (2017).......................................................................................................23

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 6
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

**Constituitional Provisions**

U.S. Const. art. I, § 8, cl. 3..............................................................................................................8

U.S. Const. art. VI, cl. 2................................................................................................................10

**Statutes**

15 U.S.C. § 7701(a)(11)..............................................................................................................8, 11

15 U.S.C. § 7706(b) .......................................................................................................................11

15 U.S.C. § 7707(a)(2)...................................................................................................................11

15 U.S.C. § 7707(b) ................................................................................................................ *passim*

RCW 19.190 (Consumer Electronic Mail Act)....................................................................... *passim*

RCW 19.86 (Consumer Protection Act) ................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)...................................................................................................................3

**Other Authorities**

ESHB 2274, Ch. 135 (Wash. 69th Leg. 2026 Reg. Session) (effective date June 11, 2026) .....................................................................................................................10, 13, 20

Keeton et al., *Prosser and Keeton on the Law of Torts* § 105 (5th ed. 1984)...............................13

*Restatement (Second) of Torts* § 525 ...........................................................................................13

Torrid, *Torrid Rewards*, https://www.torrid.com/torrid/customer-service/torrid-rewards/about-torrid-rewards.html?srsltid=AfmBOoqlQJ7Sq_rklheHG_E3qD_xvB6hJc3myHs6rVj F7e3BG8SQntzd (last visited Apr. 13, 2026).......................................................................2

16A Wash. Prac., Tort Law & Practice § 19:3 (5th ed.)...............................................................17

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 7
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

## I.    **INTRODUCTION AND RELIEF REQUESTED**

The Washington Supreme Court very recently held that a plaintiff cannot establish injury to business or property under the Consumer Protection Act ("CPA"), merely by claiming regret over a misrepresented purchase—even one a retailer allegedly falsely advertised as a sale. *Montes v. SPARC Group, LLC*, --- P.3d ---, 2026 WL 900481 (Wash. Apr. 2, 2026).

Here, Plaintiffs Angellina Perez, Tabitha Dalton, Kaela Chong, and Chandler Heiss (collectively "Plaintiffs") base their claim on alleged misrepresentations concerning sales promotions—but do not claim to have ever seen the challenged statements, much less made a purchase in response to them.  However, they claim that because these statements appeared in the subject line of an email, they violate the Washington's Consumer Electronic Mail Act ("CEMA"), and thus amount to a *per se* CPA violation, regardless of whether they were injured. What's more, Plaintiffs seek to recover $500 *per email received*, trebled to $1,500 under the CPA, for an entire class of Washington consumers over four years.  But CEMA is not a loophole that transforms no-injury advertising disputes into $1,500-per-email penalties simply because the challenged statement appeared in an email subject line.

Moreover, CEMA applies only where the sender "has reason to know" the recipient lives in Washington. Plaintiffs allege no such reason. They do not claim to have shopped at a Torrid store in Washington, to have had an order shipped to a Washington address, or to have provided Torrid any information indicating their location. Instead, they theorize that Torrid *should have* deployed tracking technology to identify their whereabouts *before* sending any email, and that based on the volume of emails sent, Torrid should have been on notice that at least some Washington residents would receive its emails. If accepted, that reading would prohibit Torrid— and every other email marketer—from sending messages to *anyone* in the country based solely on the possibility that the recipient might be a Washington resident.

The theories underpinning Plaintiffs' lawsuit conflict with *Montes*, the CPA, the meaning and purpose of CEMA, and the federal framework Congress designed to govern commercial email nationwide. If accepted, it would effectively impose Washington's law upon all commercial emails

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 1
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

sent nationwide, based on nothing more than the remote possibility that some anonymous recipient might reside here. Congress enacted the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM") to regulate commercial email and to explicitly preempt any conflicting or overlapping state laws. Plaintiffs' strict liability theory is precisely the type of claim CAN-SPAM displaces. Controlling Ninth Circuit authority holds that the only state-law claims involving commercial email that survive CAN-SPAM preemption are those sounding in traditional fraud. Plaintiffs allege nothing close to fraud – a position the *Montes* decision confirms. Further, while Plaintiffs acknowledge they must establish materiality to avoid preemption, they cannot explain how materiality could possibly be satisfied where no Plaintiff claims to have noticed, relied upon, or even read the challenged subject lines. Plaintiffs' CEMA claims are preempted.

The financial stakes demand early and careful scrutiny. At $1,500 per email across 36 challenged subject lines, Plaintiffs seek up to $54,000 per class member—a figure that, multiplied across Torrid's email list, would be both financially catastrophic and constitutionally indefensible. The Court should dismiss Plaintiffs' Complaint in its entirety, with prejudice.

## II.    FACTUAL BACKGROUND

Each Plaintiff claims to be a Washington resident who received a handful of Torrid marketing emails between December 2024 and September 2025. Complaint ¶¶ 103-106. Plaintiffs attach a list of 36 subject lines to the Complaint—most of which they do not claim to have personally received—alleging those subject lines falsely suggested that Torrid's sales promotions or Torrid Cash[1] redemption days would end a day earlier than they actually did. *Id.*, Ex. A. According to Plaintiffs, such emails were designed to "create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets." *Id.* ¶ 4; *see also id*. ¶¶ 5-6 (alleging

---

[1] Torrid CASH is free reward dollars earned through prior purchases that are redeemable against purchases on certain days throughout the year. If not used, they expire. Torrid, *Torrid Rewards*, https://www.torrid.com/torrid/customer-service/torrid-rewards/about-torrid-rewards.html?srsltid=AfmBOoqlQJ7Sq_rklheHG_E3qD_xvB6hJc3myHs6rVjF7e3BG8SQntzd (last visited Apr. 13, 2026).

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 2
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

Torrid sent "false notifications that the time to act—*i.e. purchase*—is short" and that Torrid's products "must be purchased now.") (emphasis in original).

But Plaintiffs do not claim this alleged strategy worked on them or anyone else—or that it even possibly could have, as they do not identify a single person who has even noticed or read any of the challenged subject lines. Not one Plaintiff alleges that she made a purchase she would not have otherwise made, or that she made any purchase from Torrid at all.[2] In short, Plaintiffs theory of liability is based on the fact that Torrid sent emails that allegedly landed in Plaintiffs' inboxes. That is all.

Plaintiffs claim that the challenged subject lines violate CEMA, RCW 19.190.020, which prohibits the transmission of emails containing "false or misleading information." Plaintiffs also purport to bring a CPA claim based on the alleged CEMA violation. They seek to represent a putative class of "minimally" "thousands" of Washington residents who received any of the 36 challenged emails, Compl. ¶¶ 109-113—again, even though Plaintiffs themselves do not claim to have received the vast majority of the emails identified in the Complaint. They seek $500 per email, trebled to $1,500 under the CPA,[3] plus costs and attorney's fees. *Id*. ¶ 136.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted), and "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up). "Nor does a complaint suffice if it

---

[2] To the extent Plaintiffs later claim to have made an online purchase, joined Torrid's loyalty program, or otherwise agreed to an online agreement with Torrid containing an arbitration clause, Torrid reserves the right to move to compel arbitration.

[3] The CPA permits discretionary trebling of actual damages, RCW 19.86.090, and Torrid maintains that treble damages are not available to Plaintiffs even if they could prove entitlement to statutory damages under CEMA.

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 3
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up).

 "A complaint can be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim." *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1244 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

Furthermore, regardless of the cause of action, claims sounding in fraud must comport with Federal Rules of Civil Procedure 9(b)'s heightened pleading requirements. *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b) "requires more specificity," including the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Additionally, under Rule 9(b), it is insufficient to merely point to a statement and claim that it is false; instead, plaintiffs must plead evidentiary facts giving rise to an inference that the challenged statement was false when made. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549-53 (9th Cir. 1994); *see also Strum v. Exxon Co., U.S.A.,* 15 F.3d 327, 331 (4th Cir. 1994) (litigants cannot "simply cry fraud" to satisfy Rule 9(b)).

Rule 9(b) serves not only to give notice to the defendant of the specific fraudulent conduct against which it must defend, but also:

> [T]o deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (citations omitted).

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 4
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

## IV.    ARGUMENT

Prior to the enactment of a comprehensive federal regime to address commercial email, CEMA was one of many individual state laws intended to protect consumers and internet service providers against a wide range of costs associated with spam email and text messages. *Brown v. Old Navy, LLC*, 4 Wn. 3d 580, 583-84, 567 P.3d 38, 41 (2025). Enacted in 1998, and since amended several times, CEMA's provisions prohibit sending, or conspiring to send, Washington residents commercial emails that contain false or misleading information. RCW 19.190.020(1); RCW 19.190.030. CEMA does not define "false or misleading information." CEMA provides that a "recipient of a commercial electronic mail message or a commercial electronic text message sent in violation of this chapter" may recover "five hundred dollars, or actual damages, whichever is greater." RCW 19.190.040.

Plaintiffs' CEMA claims fail out of the gate because Plaintiffs do not allege with the requisite particularity that Torrid had reason to know they were Washington residents, and do not allege facts to suggest that the subject lines they received were false or misleading. Even if the Court concludes Plaintiffs' claims are adequately pled, the claims are preempted by CAN-SPAM and must be dismissed.

### A.    Plaintiffs Do Not Plausibly Plead a CEMA Violation, Let Alone with the Required Particularity.

Under CEMA,

No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that: … (b) Contains false or misleading information in the subject line

RCW 19.190.020(1).

Plaintiffs fail to plausibly state a claim for the reasons below.

While Plaintiffs do not claim to have been deceived, only claims "in the vein of tort" can survive preemption, as discussed in Section (B), *infra*. *See also Omega World Travel, Inc. v.*

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 5
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

*Mummagraphics, Inc.,* 469 F.3d 348, 354 (4th Cir. 2006); *see also Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1049, 1062 (9th Cir. 2009)  .  Therefore, Rule 9(b) necessarily governs any actionable CEMA claim, and provides an additional basis for dismissal.

> a.    Plaintiffs Fail to Adequately Allege Torrid Knew Plaintiffs Were Washington Residents.

CEMA only applies to emails sent "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident." RCW 19.190.020(1).

Plaintiffs do not claim that the challenged emails were sent from within Washington. Instead, Plaintiffs rattle off several conclusory, speculative reasons that Torrid *may* have potentially known that they were Washington residents. *E.g.*, *id.* ¶¶ 94-95, 98-99 (Torrid "may" do these things). Plaintiffs do not plausibly or specifically support these theories by alleging Torrid knew or had knowledge of Plaintiffs or its other customers' residency. Accordingly, these theories fail on their face.

- Plaintiffs' argument that the "sheer volume of email," *id.* ¶ 94, puts Torrid "on notice that Washington residents" receive Torrid's emails, suggests that any retailer with a long email listserv or who sends out frequent emails cannot send an email *to anyone* without risking a CEMA violation because the retailer should know that the recipient *might* reside in Washington.

- Plaintiffs claim that some hypothetical consumers may have "self-report[ed]" their locations to Torrid—but Plaintiffs do not claim to have done so. *Id.* ¶¶ 95, 100. For example, they do not claim to have visited a Torrid store in Washington, had an online order delivered to a Washington address, or otherwise disclosed any connection to Washington.

- Plaintiffs do not specifically allege that Torrid has used IP addresses for geolocation purposes, but regardless, Courts have cast doubt on the reliability of such practice.

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 6
Case No. 3:25-cv-06020-DGE

*See Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. May 2, 2024) ("The fact that Defendant may have access to chat users' IP addresses and certain chat users' shipping addresses does not mean that they are in a position to make a determination as to where the chat users were located when they used the chat feature."); *United States v. Carter*, 549 F. Supp. 2d 1257, 1264 (D. Nev. 2008) (acknowledging that IP addresses can be spoofed, shared, or associated with multiple devices, complicating their use as evidence of the user's definitive location).

- Plaintiffs' allegation that Torrid "appears to use third-party applications [Cordial and MailGun] to manage its email marketing campaigns" omits any details, such as sender information or email contents, to support their theory that this would give Torrid reason to know that they live in Washington. *See id.* ¶ 97.

- While CEMA does presume knowledge of Washington residency where that information "is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address," RCW 19.190.020(2), Plaintiffs do not allege any facts to support their conclusory allegation reciting this language, Compl. ¶ 100. For instance, the Complaint does not allege what email address or domain any of the Plaintiffs use, whether that email service actually retains geographic information on its customers, and whether that geographic information is available to third parties upon request. Absent any of this information, Plaintiffs cannot meet the "knowledge" requirement.

More fundamentally, Plaintiffs' theories impermissibly invert the statutory standard. CEMA's "reason to know" requirement presupposes that a sender possesses some affirmative basis—an identifiable fact or circumstance—from which it could infer a recipient's Washington residency. Plaintiffs' approach stands that standard on its head: under their theory, a sender is presumed to have reason to know of Washington residency unless it can produce affirmative evidence to the contrary. This effectively creates a "reason ***not*** to know" standard, under which

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 7
Case No. 3:25-cv-06020-DGE

retailers face liability for emailing anyone who might conceivably be a Washington resident— even absent any indication that the recipient actually is one. No court has endorsed this reversal.

Plaintiffs' argument also contradicts a driving impetus of CAN-SPAM: that, states "do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11). (Congressional Findings and Policy). After all, "commercial e-mails are a bulk medium used to target thousands of recipients with a single mouse-click . . . ." *Omega*, 469 F.3d at 356.

Where a recipient is known only by an email address—a string of characters that is wholly agnostic as to geography—there is simply no fact from which a retailer could derive any reason to know of their Washington residency. The Complaint includes nothing to suggest that Plaintiffs were anything but anonymous. Requiring retailers to withhold emails from every subscriber who cannot be affirmatively ruled out as a Washington resident would effectively prohibit nationwide email marketing to any list that could even theoretically Washington residents.[4] The statute was not designed to compel retailers to treat the mere possibility of Washington residency as a basis for liability.

> b.    Plaintiffs Fail to Plead that Anything in the Subject Lines Was False or Misleading.

To state a claim under CEMA, Plaintiffs must have received emails that "Contain[] false or misleading information in the subject line." RCW 19.190.030(1)(b). Plaintiffs theorize that the emails were false or deceptive because they allegedly represented that a promotion would end on one date, but the next day, Torrid sent an email extending the promotion.  This is not enough to plausibly suggest (much less with the particularity required by Rule 9(b)) that the subject lines were false or deceptive.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1549-53 (9th Cir. 1994) (to

---

[4] For this reason, Plaintiffs' proposed application of CEMA also raises serious questions under the Commerce Clause.

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 8
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

satisfy Rule 9(b), plaintiffs must allege facts suggesting falsity); *Strum*, 15 F.3d at 331 (litigants cannot "simply cry fraud" to satisfy Rule 9(b)).

First, Plaintiffs' theory of "falsity" conflates Torrid's alleged pricing practices with the narrow question under CEMA: whether the subject lines themselves were materially false or misleading. After all, the purpose of a subject line is to offer a one "line" summary of the "subject" of the email. Here, Plaintiffs do not allege that any subject line misrepresented the email's contents or the scope of the advertised sale. Plaintiffs do not allege, for example, that any subject line advertised a discount on all merchandise when only select items were on sale. To the contrary, the subject lines included in the Complaint contain clear and straightforward language about sale limitations, such as "Last Day to snag 30-60% off almost everything!" "FINAL HOURS for up to 70% off select tops & dresses," and "FINAL HOURS for 50% off new arrivals." *E.g.*, Compl. ¶¶ 103-06. In other words, Plaintiffs' objection is directed at Torrid's pricing practices, and not the subject lines themselves.

Indeed, Plaintiff's counsel unsuccessfully made this same argument in a case based on Maryland's CEMA analog, *Scott v. Bloomingdales*, No. GLR-25-3661, 2026 WL 820600 (D. Md. Mar. 25, 2026). There, the court held that the fact that the body of the email provided more detail such that the subject line was not "false or misleading," because the subject line must be read "in the context of the body of the e-mail." *Id.* at *2. The same is true here. Reasonable consumers understand that sales or promotions often include certain terms and conditions, the details of which cannot be recited in a few words in a subject line. The fact that the bodies of the subject emails plainly contained those details shows the absurdity of Plaintiffs' position here.

***Second***, Plaintiffs do not allege any facts to suggest that the emails they received contained false or misleading information ***at the time they were sent***. *See Holland Furnace Co. v. Korth*, 43 Wn. 2d 618, 262 P.2d 772, 775-76 (1953) ("Another essential element necessary to establish actionable fraud is that the speaker must have 'knowledge of its falsity or ignorance of its truth.'") (ciation omitted); *In re Estate of Kessler*, 95 Wn. App. 358, 977 P.2d 591, 601 n.31(1999) (enumerating elements of fraud including a party's "knowledge of the falsity or reckless disregard

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 9
Case No. 3:25-cv-06020-DGE

as to its truth"); *see also* ESHB 2274, Ch. 135 (Wash. 69th Leg. 2026 Reg. Session) (effective date June 11, 2026) (CEMA Amendment) ("Uses a subject line which, based on the person's actual knowledge or knowledge fairly implied on the basis of objective circumstances, contains false or misleading information in the subject line."). Plaintiffs do not allege any facts showing that Torrid had definitively decided to continue a promotion at the time each email was sent; rather, they ask the Court to infer falsity based solely on Torrid's subsequent conduct. A retailer's subsequent decision to extend or reintroduce a promotion does not render an earlier promotional statement false when made.

c.        Plaintiffs Do Not Adequately Allege a Conspiracy.

Plaintiffs cursorily allege that Torrid "initiated the transmission, *conspired with another* to initiate the transmission, or assisted the transition of commercial electronic mail messages within the meaning of CEMA." Compl. ¶¶ 123-125, 133-135 (emphasis added). Yet *nowhere* does the Complaint articulate any kind of conspiracy between Torrid and any other entity or individual. Instead, Plaintiffs merely parrot the statutory language. RCW 19.190.020(1). This is not enough.

**B.        CAN-SPAM Preempts Plaintiffs' CEMA Claims and Requires Dismissal.**

Even if Plaintiffs adequately pled CEMA claims (they do not), their claims are preempted by federal statute. The Supremacy Clause of the U.S. Constitution provides that "state laws that conflict with federal law are without effect." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (*citing* U.S. Const. art. VI, cl. 2).

The CAN-SPAM Act was passed by Congress with the express intention of preempting state laws like CEMA. As pled, Plaintiffs' CEMA claims fall squarely within the scope of CAN-SPAM preemption. In enacting the CAN-SPAM Act, Congress provided a uniform standard for the regulation of commercial email. Congress struck a "careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006) ("*Omega*"); *see also Virtumundo*, 575 F.3d at 1049. "[C]ommercial e-mails are a bulk medium used to target thousands of recipients with a single mouse-click, meaning that the typical message could well be covered by the laws of many

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 10
Case No. 3:25-cv-06020-DGE

jurisdictions." *Omega*, 469 F.3d at 356. Congress recognized that because e-mail addresses do not indicate a recipient's physical location, it can be difficult or impossible to identify where a recipient lives and hence to determine which state laws apply. *Id.* § 7701(a)(11). Consequently, CAN-SPAM broadly preempts divergent state laws that regulate e-mail:

> This chapter **supersedes any statute . . . of a State . . . that expressly regulates the use of electronic mail to send commercial messages**, except to the extent that any such statute . . . prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1) (emphasis added). Importantly here, CAN-SPAM prohibits commercial emails with subject headings that are "likely to mislead a recipient" about "a material fact regarding the contents or subject matter of the message,"[5] *id.* at (a)(2), and primarily charges government agencies with enforcing that uniform rule. 15 U.S.C. § 7706(b). Private individuals like Plaintiffs lack standing to pursue private actions for relief under CAN-SPAM. *Virtumundo*, 575 F.3d at 1049–50, 1053-57 (explaining the statutory requirements for "adverse effect" and concluding that individual plaintiff lacked standing to assert CAN-SPAM claim). The plain language of the statute "demonstrates Congress's intent that the CAN–SPAM Act broadly preempt state regulation of commercial e-mail," subject only to a "limited, narrow exception." *Virtumundo Inc.*, 575 F.3d at 1061 (holding that CAN-SPAM preempted CEMA claim).

---

[5] The Washington Supreme Court was recently called upon to answer a question, on certification from this Court. *Brown v. Old Navy, LLC*, 4 Wn. 3d 580, 583, 567 P.3d 38, 41 (2025). The certified question asked: "Does RCW 19.190.020(1)(b) prohibit the transmission of a commercial email with a subject line containing any false or misleading information, or is the prohibition limited to subject lines containing false or misleading information about the commercial nature of the email message?" *Id.* at 585-86. The Washington Supreme Court answered and clarified that CEMA's prohibitions are not limited to misleading information about the commercial nature of the email. *Id.* at 590-91. However, the *Brown* opinion focuses on the *types* of misleading statements that are actionable under CEMA. The *Brown* decision neither mentions preemption under CAN-SPAM nor the pleading standards for CEMA claims in the wake of *Virtumundo*. Accordingly, *Brown* sheds little to no light upon the primary issues raised by the pleadings in this case.

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 11
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

### 1. CAN-SPAM Exempts Only State Law Actions Based on Claims that Sound in Fraud.

CAN-SPAM provides a "limited, narrow exception" for states to enforce a "statute, regulation, or rule prohibit[ing] *falsity* or *deception* in any portion of a commercial electronic mail message . . . ." 15 U.S.C. § 7707(b)(1) (emphasis added); *Virtumundo Inc.*, 575 F.3d at 1061. Under this exemption, only "traditionally tortious" theories of state law liability survive; all other theories of liability based on commercial email transmission are expressly preempted. *Virtumundo Inc.*, 575 F.3d at 1062.

This narrow reading of CAN-SPAM's safe harbor is supported by the text itself:

> Reading 'falsity' in conjunction with 'deception,' which connotes a type of tort action based on misrepresentations, we are likewise persuaded that the exception language, read as Congress intended, refers to 'traditionally tortious or wrongful conduct.'

*Id.* (citing *Omega*, 469 F.3d at 354). The Ninth Circuit found "further support for this reading in the statutory text, which counsels against any interpretation that preempts laws relating to 'acts of fraud.'" *Id*. Accordingly, only "tort action based on misrepresentations" survive preemption. *Id*.; *see also Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *1 (C.D. Cal. May 23, 2007) (CAN-SPAM's exception only allows states to apply "traditional fraud prohibitions to the realm of commercial emails[.]") (cited approvingly by *Virtumundo Inc.*, 575 F.3d at 1063-1064). Any "contrary reading," the court reasoned, would "turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Virtumundo, Inc.*, 575 F.3d at 1061 (citing *Omega*, 469 F.3d at 355). The Ninth Circuit repudiated district court decisions interpreting CAN-SPAM's exemption to be "not limited *just* to common-law fraud and other similar torts." *See Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) (emphasis in original); *see also, e.g.*, *Asis Internet Servs. v. Vistaprint USA, Inc.*, 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009).

The only claims that *can* survive CAN-SPAM preemption are claims in the vein of fraud or deceit—those alleging, *e.g.*, materiality, reliance, actual injury, and deceptive intent. *Omega*,

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 12
Case No. 3:25-cv-06020-DGE

469 F.3d at 354 (citing Keeton et al., *Prosser and Keeton on the Law of Torts* § 105, at 726–27 (5th ed. 1984) (defining deceit as species of false-statement tort); *Restatement (Second) of Torts* § 525 (describing elements of deceit)); *Virtumundo Inc.*, 575 F.3d at 1061-62 (the "Committee's repeated references to 'fraud' and 'deception' is telling and confirms that Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies"); *id*. at 1065 (requiring misrepresentation of "something of material importance").

Plaintiffs' strict-liability CEMA claims, based on the mere receipt of an email, without having to demonstrate the elements of fraud, are expressly preempted and must be dismissed with prejudice.

### 2. *Plaintiffs' CEMA Claims Do Not Fall Into the CAN-SPAM Exception, and Even if They Did, They are Not Pled with Particularity.*

There is no question that CEMA "expressly regulates the use of electronic mail to send commercial messages." 15 U.S.C. § 7707(b)(1). The statute is therefore preempted unless Plaintiffs' claims fall within CAN-SPAM's narrow safe harbor.

Plaintiffs' strict liability theory of CEMA—seeking $500 per email,[6] allegedly trebled, for an entire class of Washington consumers who may have received one of the emails in Exhibit A over four years without alleging any elements of fraud—is a far cry from a traditional fraud or deceit claim and, therefore, cannot survive preemption. *Virtumundo* confirms this type of strict liability theory, as pleaded, is exactly the type of claim Congress intended to preempt, and did preempt, under CAN-SPAM.

Moreover, to the extent Plaintiffs make such allegations (which they do not), they must provide the particularity required by Rule 9(b).  After all, any claims "in the vein of" fraud as

---

[6] The statutory penalty was recently reduced to $100 with passage of ESHB 2274, Ch. 135 (Wash. 69th Leg. 2026 Reg. Session) (effective date June 11, 2026). The legislative change does not apply to cases such as this one that were filed before the effective date. However, to the extent Plaintiffs define the class as encompassing members up "to the date a class certification order is entered in this action," Compl.  ¶ 111, the amended statute would apply to alleged violations that post-date the effective date.

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 13
Case No. 3:25-cv-06020-DGE

required to avoid preemption, (*Omega*, 469 F.3d at 354), would also necessarily "sound in fraud" under Rule 9(b).

Under Washington law, a fraud claim requires proof of the following nine elements:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Wilson v. Aerospace LLC v. Boeing Co. Inc.*, 2025 WL 821904, at *13 (citing *Stiley v. Block,* 130 Wn.2d 486, 505, 925 P.2d 194, 204 (1996)); *see also* WPI 160.01. Thus, for their CEMA claim to survive, Plaintiffs must allege, with Rule 9(b) particularity, that Torrid committed "'acts of fraud'" under "traditionally tortious" theories of state law. *Virtumundo*, 575 F.3d at 1049, 1061 (quoting 15 U.S.C. § 7707(b)(2)); 15 U.S.C. § 7707(b)(1).

Plaintiffs fail to allege each element of fraud with particularity and Plaintiffs therefore fail to state a claim as a matter of law.

a.      <u>Plaintiffs' Complaint Fails to Adequately Allege Materiality.</u>

The Ninth Circuit has made clear that materiality is required to avoid CAN-SPAM preemption. *Virtumundo*, 575 F.3d at 1049, 1059 (claims based on "immaterial misstatements" are preempted); *id.* at 1061–62 (stressing that "materiality component comport[s] with the policy pursued by the federal legislation as a whole"); *id.* at 1062 (the "Committee's repeated references to 'fraud' and 'deception' is telling and confirms that Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies"); *id*. at 1065 (only claims premised on "*material*" misstatements survive preemption) (emphasis in original); *id*. (requiring "something of *material* importance") (emphasis in original). Even Plaintiffs appear to concede that materiality is required. *See* Compl. ¶¶ 18, 40, 42 ("Subject lines of emails are framed to attract customers' attention away from the spam barrage to a message that entices customers to click, and ultimately *purchase*.") (emphasis in original).

Materiality resembles "a but-for standard" and "asks whether the misrepresentation constituted an inducement or motive to enter into a transaction." *Kousisis v. United States*, 605

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 14
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

U.S. 114, 131 (2025) (emphasis added). Plaintiffs fail to clear this threshold hurdle—especially because Rule 9(b) governs allegations of materiality. *See*, *e.g.*, *Joseph v. Amazon.com*, *Inc.*, 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (granting defendant judgment on the pleadings because plaintiff failed to plead with sufficient particularity any "material representation to him that he had right to and did rely upon to his detriment"); *Khan Air, LLC v. U.S. Aircraft Ins. Grp.*, 2005 WL 2739167, at *1 (W.D. Wash. Oct. 24, 2005) (dismissing counterclaim that failed to "adequately ple[a]d materiality of the omission" or "the nature of its damages[,] [which] must be plead with particularity").

*Nowhere in the Complaint do Plaintiffs contend that any statement by Torrid in any email subject line was material to Plaintiffs in any way*. Instead, they rely on a vague assertion that people care about sales. Materiality is not a generic concept that can be satisfied by pointing to what consumers value in the abstract; it requires a showing that the specific misstatement, when viewed in context, bore on the very essence of a transaction in which the plaintiff actually engaged. *See Martin v. Miller*, 24 Wn. App. 306 (1979) (material fact must "go to the very essence and substance" of the transaction). Absent any allegation that any Plaintiff acted upon the challenged subject lines or even read or noticed them, Plaintiffs cannot plausibly show that the contents of the subject lines affected their decisions to transact, or not, with Torrid. *Id.* at 309 (analyzing whether "representations were material to the plaintiffs' decision to enter into a purchase and marketing agreement with the defendant"). Indeed, Plaintiffs do not allege that they entered into any transaction at all. The mere existence of emails sitting somewhere in an inbox cannot be sufficient to establish materiality. If, as here, the recipient never even noticed the email, and did not make a resulting purchase, there can be no inference of materiality.

Plaintiffs' theory fails four times over:

*First*, it is not sufficient to speculate that some hypothetical consumer *may* find the contents of the subject line material—Plaintiffs must allege that the subject line was actually material *to them personally. Virtumundo*, 575 F.3d at 1063-64 (concluding CAN–SPAM preemption applied to plaintiff's CEMA claim and noting plaintiff "admit[ted] he was not in any way misled or

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 15
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

deceived" by defendant's promotional emails); *Elcon*, *Const. Inc. v. E. Wash. Univ*, 174 Wn.2d 157, 167-68, 273 P.3d 965, 970-71 (2012) (affirming judgment for defendant where alleged misstatements were not material to the plaintiff); *Martin*, 24 Wn. App. at 309 ("material to the plaintiffs' decision to enter into a purchase"). Here, Plaintiffs make no such claim.

**Second**, materiality requires some resulting action—here, making a resulting purchase. The fact that some people might care about the duration of a sale in the abstract is not sufficient. *See Martin*, 600 P.2d at 700 (1979); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether the alleged misstatement was "material to *[the plaintiff's] decision-making*") (emphasis added); *Elcon*, 273 P.3d at 970–71 (concluding that where omitted information did not impact plaintiff's bidding decision, it was not material). Plaintiffs do not allege to have read the email subject lines, but even if they did, Plaintiffs do not claim to have changed their behavior in response to seeing them. Plaintiffs' strict liability theory (i.e. is the email in the inbox) would eviscerate CEMA's materiality requirement and expand the statute beyond the narrow scope preserved by CAN-SPAM's preemption exception. *See Omega*, 469 F.3d at 355.

**Third**, the Court cannot consider the content of the subject line in a vacuum. Multiple courts have concluded that an email subject line, divorced from context is "at best [a] technical allegation that finds no basis in traditional tort theories and thus falls within CAN-SPAM's express preemption clause (and outside the exception)." *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011) (citing *Virtumundo* and *Omega*); *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1417–18 (2014) ("The e-mail advertisement plainly and conspicuously stated the conditional nature of the offer, so that an e-mail recipient, acting reasonably under the circumstances, would not be misled about a material fact with respect to the nature of the offer of a free gift or free shipping. . . . [W]e view an email's subject line in conjunction with the body of the e-mail, rather than in isolation"); *see also Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025) ("[t]o decide whether a misstatement or omission can mislead, we need to look at 'the context surrounding the statement[ ].'"); *Shellenberger v. AIG WarrantyGuard, Inc.*, 2025 WL

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 16
Case No. 3:25-cv-06020-DGE

732874, at *6 (W.D. Wash. Feb. 3, 2025) ("after reading Defendants' offer, a reasonable consumer would realize that it does not contain all applicable terms and conditions, and the consumer would know to follow the link in the disclaimer to view the terms and conditions.") (currently on appeal). "Every reasonable shopper knows that the devil is in the details." *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015). Reasonable consumers would not make a purchase based on an email subject line, which, by its very nature, is a single "line" summary of the "subject" of the email.

*Finally*, Plaintiffs' "limited time" liability theory is particularly deficient because alleged urgency statements—or use of certain emojis—are not material as a matter of law. *See* Compl. ¶¶ 32-90.   A statement is material only if it affects "the very essence of the bargain." *Martin*, 600 P.2d at 700-01; *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 193 n.5 (2016) (a misrepresentation must concern the "essence of the bargain"); 16A Wash. Prac., Tort Law & Practice § 19:3 (5th ed.) (emphasis added) ("A material fact is one that *not only influences and affects the transaction*, but also goes to its *very essence and substance*."). Statements such as "limited," "ends tonight," "last chance," or "today only" do not concern the nature, price, or quality of the product being sold, and therefore cannot be "something of material importance." *Brummett v. Wash. Lottery*, 171 Wn. App. 664, 678, 288 P.3d 48 (2012) (holding that an advertisement claiming tickets were "going fast" was not material); *see also Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1407 (Cal. App. 2014) (unreasonable to conclude that "commercial missives" like "free gift" or "complementary" in subject lines were likely to deceive a recipient under California's analogous spam statute). At most, such statements may influence *when* the consumer decided to buy—prompting a purchase one day earlier due to an asserted sense of urgency—but they do not alter the fundamentals of the transaction.

b.    Plaintiffs' Complaint Does Not Adequately Allege Reliance.

To plausibly allege a CEMA violation that is not preempted by federal law, a plaintiff must also allege his own "reliance on the truth" of the misrepresentation.  *See M.G. v. Bainbridge Island Sch. Dist. #303*, 34 Wn. App. 2d 51, 78 n.23, 566 P.3d 132, 148 (2025) (outlining elements of

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 17
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

fraud under Washington law); *Virtumundo*, 575 F.3d at 1063-64 (concluding CAN–SPAM preemption applied to plaintiff's CEMA claim and noting plaintiff "admit[ted] he was not in any way misled or deceived" by defendant's promotional emails); *see also* WPI 160.01 (elements of fraud).

Plaintiffs fail to clear this hurdle as well. *BP W. Coast Prods., LLC v. Shalabi*, 2012 WL 2277843, at *5 (W.D. Wash. June 14, 2012) (dismissing fraud claims where plaintiff could not allege reliance element); *Isomedia, Inc. v. Spectrum Direct, Inc.*, 2009 WL 10676391, at *3–4 (W.D. Wash. May 27, 2009) ("[A]n allegation that an email was received is not the same as an allegation that anyone acted in reliance upon the information contained in it."). Plaintiffs do not allege that they read the challenged email subject lines, let alone that they relied on the subject lines to make a purchase. *See Bainbridge Island Sch. Dist. #303*, 34 Wn. App. 2d at 78 n.23; *see also Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (holding plaintiff "failed to plead her fraud claims with particularity as required by Rule 9(b)" by not alleging detrimental reliance); *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782 (9th Cir. 2018) (finding complaint "failed to plead reliance with particularity");.

        c.      <u>Plaintiffs' Complaint Does Not Allege that Plaintiffs or Class Members Suffered Any Fraud-Based Injury.</u>

To plausibly allege both a CEMA violation, that is not preempted by federal law, and a private CPA claim, a plaintiff must allege injury. "A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Virtumundo*, 575 F.3d at 1066 (citing *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 84, 170 P.3d 10, 22 (2007)); *see also M Bainbridge Island Sch. Dist. #303*, 34 Wn. App. 2d at 78 n.23 (elements of fraud); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986) (to prevail in a private CPA claim, the plaintiff must prove five elements: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) a causal link between the unfair or deceptive act and the injury).

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 18
Case No. 3:25-cv-06020-DGE

Here, Plaintiffs do not allege that they sustained any injury, economic or otherwise, besides the "annoyance and harassment" of receipt of marketing emails.[7] *See* Compl. ¶¶ 5, 7, 102; *see also id.* ¶ 5 (receipt of the emails "waste[] customers' time."). But "annoyance and harassment" are tied to the frequency of emails, which would not change even if they had a different subject line. Thus, the alleged CEMA violation—the right to be free from deceptive emails—did not and could not ever cause their alleged misrepresentation or fraud injury.

Indeed, the Washington Supreme Court very recently held that non-economic injuries akin to annoyance and harassment are insufficient to establish cognizable injuries under the CPA. *Montes*, 2026 WL 900481, at 4*-5. On certified question, that court held that "[o]nly economic losses count as injuries to "business or property" under the CPA – noneconomic losses, such as "personal injury, 'mental distress, embarrassment, and inconvenience,'" do not count." *Id*. at *1. Here, the Complaint contains no allegation of "objective economic loss." *Id*. at *8. Nor could it. Plaintiffs' entire lawsuit is premised on Plaintiffs' passive receipt of Torrid's marketing emails.

Beyond this fundamental defect, Plaintiffs' theory of injury is tortured and remote. If Plaintiffs did not want to receive emails from Torrid, they could have easily unsubscribed. They do not claim that they tried to do so and were unable, or that they even wanted to. Their mere receipt of emails, which they chose to receive, is not a fraud-based injury.

---

[7] Torrid acknowledges that this Court ordered parties in another CEMA action filed by Plaintiffs' counsel to show cause why the action should not be remanded back to state court and is currently evaluating whether plaintiff has alleged Article III standing and whether complaint alleges sufficient damages to reach CAFA's jurisdictional threshold. *Devivo v. Sheex, Inc.*, No. 3:25-cv-05807-DGE (filed Sep. 10, 2025) (Dkt. 28 – Order to Show Cause), (Dkt. 29 – Plaintiff's Response), (Dkt. 32 – Sheex's Response). Torrid endorses the arguments set forth by the defendant in that case, which is represented by some of Torrid's same counsel. *See also Harbers v. Eddie Bauer*, 415 F. Supp. 3d 999, 1011–12 (W.D. Wash. 2019) (denying plaintiff's motion to remand CEMA claim). However, Article III standing is a different threshold than the statutory injury required under the CPA or injury required for fraud.

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 19
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

**3.** ***This Case is Distinguishable from Recent Decisions in this District and, Regardless, the Court is not bound by Those Opinions and Must Follow Virtumundo.***

*Virtumundo* remains the only decision from the Ninth Circuit addressing the scope of CAN-SPAM's preemption clause. 575 F.3d at 1060–1064; *see also Von Allmen v. F/V Andronica*, 2005 WL 8172226, at *2 (W.D. Wash. Dec. 16, 2005) ("This Court is not at liberty to reevaluate the policy choices underlying that decision or to ignore the Ninth Circuit's holding.").

Plaintiffs will undoubtedly argue that this Court should disregard *Virtumundo* because it addressed a different section of CEMA and should instead follow recent trial court decisions finding CEMA claims are not preempted by CAN-SPAM. *See Harrington v. Vineyard Vines, LLC*, 813 F. Supp. 3d 1218, 1220 (W.D. Wash. 2025), *reconsideration denied*, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026) ("*Harrington II*"); *Ma v. Nike*, --F. Supp. 3d. --, 2026 WL 100731, at *2 (Jan. 14, 2026); *Kempf v. Fullbeauty Brands Ops. LLC*, 2026 WL 395677, at *4 (W.D. Wash. Feb. 12, 2026); *Jerde v. BYLT LLC*, 2026 WL 415445, at *1 (W.D. Wash. Feb. 13, 2026); *Agnew v. Macy's Retail Holdings, LLC*, 2026 WL 764140, at *1 (W.D. Wash. Mar. 18, 2026).

But this is an improperly narrow reading of *Virtumundo*, **which interpreted the meaning of "falsity or deception" in CAN-SPAM's preemption clause rather than the specific CEMA provision at issue**. As the Ninth Circuit in *Virtumundo* explained, in enacting CAN-SPAM, Congress saved from preemption "only 'statutes, regulations, or rules that target *fraud or deception*.'" 575 F.3d at 1061–1062 (quoting S. Rep. No. 108-102 at 21) (emphasis in original). Recent decisions in this Court stray from that broad directive by claiming that "CEMA cases do not . . . sound in fraud and they need not do so to avoid preemption by CAN-SPAM." *Kempf*, 2026 WL 395677, at *4.

Further, in *Harrington*, which is the primary support for *Ma*, *Kempf*, *Jerde*, and *Agnew*, **the court focused on whether CEMA is preempted on its face, rather than considering the plaintiff's specific allegations**. *See Harrington II*, 2026 WL 125134, at *1 ("Defendant did not … mention the terms 'as-applied' or 'facial' in its motion to dismiss[.]"). In holding this distinction irrelevant in *Harrington*, the court contradicted *Virtumundo*, which specifically

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 20
Case No. 3:25-cv-06020-DGE

considered and found preempted the plaintiff's claims *as pleaded*. *Virtumundo*, 575 F.3d at 1064; *see also Omega*, 469 F.3d at 353 ("Whatever the precise scope of the Oklahoma provision might be, we cannot agree that [plaintiff's] action for immaterial errors survives preemption"); *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at *9 (W.D. Wash. Aug. 5, 2008), *aff'd sub nom. Ferguson v. Active Response Grp.*, 348 F. App'x 255 (9th Cir. 2009) (finding plaintiff's CEMA claim preempted as pled). Such a finding holds a defendant to an inappropriately high standard: i.e., that they must show every possible claim under CEMA is preempted, as opposed to whether the plaintiff's specific claim, as pled, is preempted. *See Virtumundo, Inc.*, 575 F.3d at 1063 ("It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation. We are compelled to adopt a reading of the preemption clause that conforms with the statute's structure as a whole and the stated legislative purpose.").

Finally, *the* **Kempf, Jerde***, and* **Agnew** ***courts did not address the materiality requirement***, let alone analyze whether specific retailer communications impacted the "very essence and substance" of a transaction in which the plaintiff actually engaged. *See Martin*, 600 P.2d at 700–01.[8] Only the *Ma* and *Harrington* decisions even acknowledged materiality as an essential element of certain claims, including claims brought under the CAN-SPAM Act. 2026 WL 100731, at *3; 813 F. Supp. 3d at 1220. However, the *Ma* court did not point to specific statements by defendant Nike or examine whether certain Nike advertisements were material to the parties' transaction history. *See* 2026 WL 100731, at *3. The *Harrington* court concluded that "reasonable inferences" that could be drawn from the complaint allegations, 2025 WL 3677479, at *1, but likewise did not analyze specific statements or the impact on customers'' behavior.  But the Ninth Circuit in *Virtumundo* did analyze a CEMA claim in the context of the CAN-SPAM Act and set out the necessary elements of a non-preempted CEMA action, including materiality of the

---

[8] *See also* the amicus brief filed by the National Retail Federation in support of Full Beauty Brands' Request for Interlocutory Review.  *Kempf v. Washington*, No. 2:25-cv-01141-TSZ (W.D. Wash. Mar. 31, 2026) (Dkt. 57).

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 21
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

false or misleading statement. *Virtumundo Inc.*, 575 F.3d at 1061-62 ("Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies"); *id.* at 1065 (requiring misrepresentation of "something of material importance").

This Court is not bound by these five district court decisions and should not follow them. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (internal quotations omitted).[9] If it is inclined to follow them, however, Torrid requests that the Court instead ask the Washington Supreme Court to clarify the scope of CAN-SPAM preemption and the meaning of materiality in this context. These are threshold questions whose significance extends far beyond this case and directly affect the more than 100 CEMA cases that have been filed since *Brown v. Old Navy*.

### C.    Plaintiffs' Derivative CPA Claim Must Also be Dismissed

Because Plaintiffs' CEMA claims are preempted and must be dismissed, their derivative CPA claims likewise fail. *See Virtumundo, Inc.*, 575 F.3d at 1065 (CPA claims "grounded in CEMA violations, are likewise inadequate and [a]re properly dismissed"); *Taie v. Ten Bridges LLC*, 704 F. Supp. 3d 1147, 1155 (W.D. Wash. 2023) (dismissing CPA claim where underlying statutory claim failed); *Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1093 (W.D. Wash. 2023) (CPA claim properly dismissed where plaintiff failed to state CEMA violation), *overruled on other grounds*.

Independent of the CEMA deficiencies, Plaintiffs also fail to establish an "injury to business or property"—an essential element of any CPA claim. The *Montes* decision makes this clear: "the CPA excludes noneconomic injuries like personal injury, 'mental distress, embarrassment, and inconvenience.' . . . [T]he injury must be an economic loss." 2026 WL 900481, at *4-5 (internal citations omitted).

---

[9] The Court is likewise not bound by decisions in the Eastern District. *E.g.*, *Washington v. Ulta Salon, Cosmetics & Fragrance, Inc.*, --F. Supp. 3d --, 2026 WL 571122, at *3-4 (E.D. Wash. Feb. 27, 2026).

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 22
Case No. 3:25-cv-06020-DGE

Although the Washington Supreme Court in *Wright v. Lyft, Inc.*, 189 Wn. 2d 718 (2017) has considered the CPA's injury requirement in the context of CEMA's prohibition on unsolicited text messages, its reasoning cannot logically apply here to email subject lines.  In *Wright*, the Court rejected Lyft's argument that "that liability under CEMA turns on whether a cell phone user can demonstrate … pecuniary loss" because lawmakers "inten[ded] to limit the practice of sending *any* unsolicited commercial text messages because they cause injury to consumers by using limited data and memory of mobile devices and interrupting receipt of necessary and expected messages." 189 Wash. 2d at 731.  That reasoning, however, would not apply in the context of RCW 19.190.020(1)(b), which separately governs the content of email subject lines rather than whether they are sent at all.  After all, an email takes up the same amount of space regardless of the contents in its subject line. This statutory context is critical. Where, as here, the plaintiff claims that a challenged statement is false or deceptive, and *that alone* is the basis for the claim, *Montes* governs. Under *Montes*, a plaintiff "has not alleged a cognizable CPA injury in her business or property [where] she does not allege an objective economic loss."  *Montes*, 2026 WL 900481 at 9 (rejecting plaintiff's theory of CPA injury from deception without any allegation of actual economic harm). Because Plaintiffs rely on precisely the kinds of non-economic losses that *Montes* rejected, they have not established an injury to business or property.  This is a fundamental defect, and their CPA claims should be dismissed.[10]

## V.    CONCLUSION

Alleged receipt of an email with a subject line that extends or modifies the terms of a previous sale or promotion is not and cannot be the basis of a CEMA claim. This is especially true where, as here, Plaintiffs do not allege to have seen or read the emails, much less relied upon them to make a purchase. Plaintiffs fail to plausibly, much less with particularity, state a claim for a

---

[10] Alternatively, the Court should certify a question to the Washington Supreme Court for clarification on how to apply the CPA's injury requirement in the context of RCW 19.190.020(1)(b).

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 23
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350

violation of CEMA. Plaintiffs' CPA claims, premised upon their CEMA claims and theory, must likewise fail.

Even if Plaintiffs can state a claim for a violation of CEMA, such claims are preempted by the federal CAN-SPAM Act. To the extent Plaintiffs seek to avoid CAN-SPAM preemption by asserting a claim for fraud, they fail to allege such a claim, and Plaintiffs' Complaint must be dismissed in its entirety with prejudice.

DATED: April 13, 2026

BALLARD SPAHR LLP


By:    *s/ Meegan B. Brooks*
    Meegan B. Brooks, WSBA No. 62516
    Stephanie Sheridan*
    **BALLARD SPAHR LLP**
    71 Stevenson Street, Suite 400
    San Francisco, California 94105
    Telephone: 424.204.4400
    brooksm@ballardspahr.com
    sheridans@ballardspahr.com

    **BAKER & HOSTETLER LLP**
    Cornelia Brandfield-Harvey, WSBA No. 59746
    999 Third Avenue, Suite 3900
    Seattle, WA 98104-4076
    Telephone: 206.332.1380
    cbrandfieldharvey@bakerlaw.com

    *Pro Hac Vice Forthcoming*

    *Attorneys for Defendant Torrid, LLC*

    I certify this memorandum contains 7,894 words in compliance with the Local Civil Rules.

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 24
Case No. 3:25-cv-06020-DGE

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all attorneys of record.

DATED this 13th day of April, 2026.

*/s/ Meegan B. Brooks*
  Meegan B. Brooks

*Attorneys for Defendant Torrid, LLC*

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT - 25
Case No. 3:25-cv-06020-DGE

BALLARD SPAHR LLP
71 STEVENSON STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94105
424.204.4400 FAX: 424.204.4350