UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| ANGELLINA PEREZ, TABITHA DALTON, KAELA CHONG, and CHANDLER HEISS, on behalf of themselves and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>     vs.<br><br>TORRID, LLC,<br>                       Defendant. | Case No. 3:25-cv-06020-DGE<br><br>The Honorable David G. Estudillo<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** |

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS      i

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     ARGUMENT ............................................................................................................... 3

        A.      Plaintiffs State a Claim Under CEMA. ......................................................... 4

                i.      Plaintiffs Have Sufficiently Pled Torrid's Knowledge of Email Recipients'
                        Washington Residency ......................................................................... 4

                ii.     Plaintiffs plausibly plead receipt of false or misleading subject lines. ............. 7

        B.      Plaintiffs' CEMA claims are not preempted by the CAN-SPAM Act. ................ 12

                i.      Torrid's deceptions are more than bare immaterial errors. ........................... 15

                ii.     Torrid's non-existent preemption standard does not apply ............................ 20

        C.      Plaintiffs' CPA claim survives ................................................................... 24

III.    CONCLUSION ......................................................................................................... 24

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahamian v. loanDepot.com LLC*,
    2024 WL 1092442 (D. Ariz. Mar. 13, 2024) ...............................................................................3

*Agnew, et al. v. Macy's Retail Holdings, Inc.*,
    2026 WL 764140 (W.D. Wash. March 18, 2026) ..........................................................................2

*Arcilla v. Adidas Promotional Retail Operations, Inc.*,
    488 F. Supp. 2d 965 (C.D. Cal. 2007) .........................................................................................3

*Ashby v. Farmers Ins. Co. of Oregon*,
    592 F. Supp. 2d 1307 (D. Or. 2008) ...........................................................................................3

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
    622 F. Supp. 2d 935 (N.D. Cal. 2009) .........................................................................21, 22, 23

*Asis Internet Servs. v. Subscriberbase Inc.*,
    2009 WL 4723338 (N.D. Cal. Dec. 4, 2009) ..............................................................................20

*Asis Internet Servs. v. Vistaprint USA, Inc.*,
    617 F. Supp. 2d 989 (N.D. Cal. 2009) ..................................................................................20, 22

*Bolden-Hardge v. Office of California State Controller*,
    63 F.4th 1215 (9th Cir. 2023) ......................................................................................................3

*Braxton-Secret v. A.H. Robins Co.*,
    769 F.2d 528 (9th Cir. 1985) ........................................................................................................7

*Brown v. Old Navy, LLC*,
    4 Wash. 3d 580 (2025)........................................................................................................ *passim*

*Brummet v. Washington's Lottery*,
    288 P.3d 48 (Wash. Ct. App. 2012)............................................................................................18

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ........................................................................................................9

*Elcon Const., Inc. v. E. Washington Univ.*,
    174 Wash. 2d 157 (2012)............................................................................................................21

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ......................................................................................................20

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS            iii

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ................................................................ *passim*

*Great Pac. Sec. v. Barclays Cap., Inc.*,
743 F. App'x 780 (9th Cir. 2018) ...............................................................22

*Harbers v. Eddie Bauer, LLC*,
415 F. Supp. 3d 999 (W.D. Wash. 2019)......................................................24

*Harrington v. Vineyard Vines, LLC*,
2025 WL 3677479  (W.D. Wash. Dec. 18, 2025) .......................................2, 8, 11, 19

*Haskins v. Symantec Corp.*,
654 F. App'x 338 (9th Cir. 2016) ...............................................................22

*Hoang v. Reunion.com, Inc.*,
2010 WL 1340535 (N.D. Cal. Mar. 31, 2010)...............................................21

*Hypertouch, Inc. v. ValueClick, Inc.*,
192 Cal. App. 4th 805 Cal. Rptr. 3d 8 (2011)...............................................21

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
2009 WL 10676391 (W.D. Wash. May 27, 2009)...........................................21

*Jackson*, *et al. v. Hanesbrand, Inc.*,
No. 2:25-CV-00440-SAB (E.D. Wash. April 28, 2026)......................................2

*Kempf, et al.*, v. *FullBeauty Brands Ops.*,
2026 WL 395677 (W.D. Wash. Feb. 12, 2026)..........................................2, 5, 19

*Kousisis v. United States*,
145 S. Ct. 1382 (2025).......................................................................16, 17

*Littlejohn v. Kaiser Fdn. Health Plan of Wash.*,
2024 WL 4451955 (W.D. Wash. Oct. 9, 2024) ........................................... *passim*

*Ma v. Nike, Inc.*,
2026 WL 100731 (W.D. Wash. Jan. 14, 2026)...........................................2, 19

*Martin v. CCH, Inc.*,
784 F. Supp. 2d 1000 (N.D. Ill. 2011) .......................................................18

*Martin v. Miller*,
24 Wash. App. 306 (1979)......................................................................21

*Montes v. SPARC Grp. LLC,*
 2026 WL 900481 (Wash. Apr. 2, 2026) ......................................................24

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS                iv

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*New Mexico State Inv. Council v. Ernst & Young LLP*,
   641 F.3d 1089 (9th Cir. 2011) ..............................................................................22

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
   469 F.3d 348 (4th Cir. 2006) .........................................................................14, 23

*Rosolowski v. Guthy-Renker LLC*,
   230 Cal. App. 4th 1403 (2014) ............................................................................18

*Sams v. Yahoo! Inc.*,
   713 F.3d 1175 (9th Cir. 2013) .....................................................................3, 15, 20

*Scott v. Bloomingdales*,
   2026 WL 820600 (D. Md. Mar. 25, 2026)............................................................11

*Shellenberger v. AIG WarrantyGuard, Inc.*,
   2025 WL (W.D. Wash. Feb. 3, 2025)....................................................................18

*Smith v. Anastasia Inc.*,
   2014 WL 12577598 (S.D. Cal. Sept. 15, 2014)....................................................21

*Sneed v. Talphera, Inc.*,
   147 F.4th 1123 (9th Cir. 2025) .............................................................................18

*State of Washington et al. v. Ulta Salon Cosmetics & Fragrance, Inc.*
   2026 WL 571122 (E.D. Wash. February 27, 2026)..........................................2, 19

*State v. Heckel*,
   122 Wash. App. 60 (2004)..................................................................5, 11, 15, 24

*Stephens v. Omni Ins. Co.*,
   159 P.3d 10 (Wash. Ct. App. 2007)......................................................................18

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act
   (FACTA) Litig.*,
   300 F.R.D. 347 (C.D. Cal. 2013) ...........................................................................3

*U. S. Fire Ins. Co. v. Hawaiian Canoe Racing Ass'ns*,
   424 F. Supp. 3d 1061 (2019) ................................................................................10

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
   76 F.4th 1164 (9th Cir. 2023) ...............................................................................21

*Wagner v. Spire Vision*,
   2014 WL 889483 (N.D. Cal. Mar. 3, 2014)..........................................................21

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 ............................................................................................18

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS                v

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Wright v. Lyft, Inc.*,
    406 P.3d 1149 (Wash. 2017)............................................................21, 22, 24

*Young v. Toyota Motor Sales, U.S.A.*,
    442 P.3d 5 (Wash. Ct. App. 2019).................................................................8

**Statutes**

15 U.S.C. §§ 7701–7713.................................................................................12, 13

Cal. Bus. & Prof. Code § 17200 ..........................................................................18

Cal. Bus. & Prof. Code § 17529.5 ........................................................................18

Wash. Rev. Code. (RCW) § 19.190.020........................................................ *passim*

Wash. Rev. Code. (RCW) § 19.190.030..........................................................1, 24

Wash. Rev. Code. (RCW) § 19.190.040................................................................24

**Other Authorities**

Restatement (Second) of Torts § 538 (Am. Law Inst. 1977)................................16

S. Rep. No. 108-102..............................................................................................13

Merriam-Webster Dictionary................................................................................10

Cordial Integrates with Radar to Deliver Enhanced Geo- Location Customer
    Experiences, CORDIAL (Sept. 19, 2024) ......................................................6

How to Know Where an Email Was Sent from Using Mailgun, AEROLEADS
    (Mar. 16, 2026) ...............................................................................................6

U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital
    Design Can Harm Competition and Consumers* 27 (2022)...........................15

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS                vi

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

## I.  **INTRODUCTION**

Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA") prohibit commercial emails containing "false or misleading information in the subject line." RCW § 19.190.020(1)(b); *see id.* § 19.190.030(1)(b) (CEMA violations are CPA violations). Faced with this clear prohibition, recently affirmed in a decision from the Supreme Court of Washington, *see Brown v. Old Navy, LLC*, 4 Wash. 3d 580 (2025), Defendant Torrid, LLC ("Torrid") simply decided to ignore it.

Torrid relentlessly spams consumers' inboxes with email subject lines embellished with caps, exclamations and emojis that herald the beginning, middle, and merciful end of promotions—*falsely*. "Memorial Week Sale ends TONIGHT!" or "Final hours!" or "LAST CHANCE[,]" proclaimed Torrid of its promotional prices. *See* Compl. Ex. A. But it was neither the last chance nor the final hours; the deal wouldn't expire that night. To the contrary, the same or *better* prices would be available to consumers, in some instances, as soon as the following day. *See* Compl. ¶¶ 41-92.

Feigned mistakes, false deadlines, urgent warnings. When deployed to deceive consumers, these tactics are known as false limited time messages, false time scarcity claims, or false urgency claims, *id.* ¶¶ 32-34, and are a "common way online marketers manipulate consumer choice by inducing false beliefs." *Id.* ¶ 32. Marketers use them because they *work*. *See id.* ¶¶ 32-39. They cause consumers to narrow their purchasing decisions, leaving them worse off. *See id.* As deployed by Torrid, this flavor of manipulation amounts to straightforward violations of CEMA and the CPA.

Nevertheless, by inapposite application of governing standards and linguistic bluster, Torrid's Motion to Dismiss (Dkt. 21, "Mot.") seeks to divert attention from its deceptive subject

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

1

headings—and the false urgency they create—by suggesting they aren't misleading after all. Separating the wheat from the chaff: Torrid has no facial attack against Plaintiffs' well-pled allegations of material deception under CEMA, aligned with the Washington Supreme Court's opinion in *Brown*.

Each and every argument in Torrid's Motion has been wholly rejected as of late. This Court and the Eastern District of Washington have all recently held that CEMA is not preempted, is not unconstitutional, and that cases under CEMA may proceed. *E.g.*, *Ma v. Nike, Inc.*, No. C25-1235JLR, __ F. Supp. 3d __, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026); *Harrington v. Vineyard Vines, LLC*, No. C25-1115 TSZ, __ F. Supp. 3d __, 2025 WL 3677479, at *1 (W.D. Wash. Dec. 18, 2025), *reconsideration denied sub nom.* 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Kempf, et al.*, v. *FullBeauty Brands Ops.*, No. C25-1141 TSZ, 2026 WL 395677, at *4-5 (W.D. Wash. Feb. 12, 2026) (same); *Agnew, et al. v. Macy's Retail Holdings, Inc.*, 2026 WL 764140 (W.D. Wash. March 18, 2026); *see also State of Washington et al. v. Ulta Salon Cosmetics & Fragrance, Inc.* ___ F. Supp. 3d ___, 2026 WL 571122, at *3 (E.D. Wash. February 27, 2026); *Jackson*, *et al. v. Hanesbrand, Inc.*, No. 2:25-CV-00440-SAB (E.D. Wash. April 28, 2026), Dkt. 37. Torrid provides no meaningful analysis of these cases in its brief, which misapplies the leading decision on preemption in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009). In doing so, Defendant strikes a discordant note against a growing chorus of judicial authority holding CEMA is not preempted.

The Washington legislature has determined that transmitting emails to consumers that contain false or misleading subject lines is a violation of the law, and the Washington Supreme Court has recently clarified the law around what is false or misleading. Here, Plaintiffs have adequately alleged numerous violations of CEMA by Torrid, and any suggestion that Defendant

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

was simply engaged in innocent business practice is belied by its repeated and deliberate efforts to sway consumer behavior based upon information the retailer knew was wrong. Moreover, Torrid's suggestion that the "financial stakes" of this case may result in economic hardship to Defendant is of no moment.[1] Mot. 2; *see Bolden-Hardge v. Office of California State Controller*, 63 F.4th 1215 (9th Cir. 2023). As such, the Court should deny the motion.

## II.    ARGUMENT

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true, and all reasonable inferences are drawn in Plaintiffs' favor. *Littlejohn v. Kaiser Fdn. Health Plan of Wash*., 2024 WL 4451955, at *3 (W.D. Wash. Oct. 9, 2024). Dismissal is inappropriate unless the complaint fails to state a claim that is "plausible on its face." *Id*. Where, as here, a defendant seeks Rule 12(b)(6) dismissal based on an affirmative defense, it must show that the "allegations in the complaint suffice to establish the defense" and the defense is "apparent from the face" of the complaint. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotation marks omitted).

---

[1] Torrid's assertion that the potential damages, as it calculates them, are "constitutionally indefensible" is an attempt to telegraph to the Court Defendant's policy disagreement with CEMA. It is not appropriate to consider a constitutional challenge to damages where they have not yet been awarded. *See Abrahamian v. loanDepot.com LLC*, No. CV-23-00728-PHX-SMB, 2024 WL 1092442, at *3 (D. Ariz. Mar. 13, 2024) ("[A]ny due process challenge to excessive damages may only be raised post-trial."); *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1316 (D. Or. 2008) ("This Court does not have any basis for determining whether the verdict will be constitutionally excessive before there is a full hearing of all of the evidence and a decision by the jury."); *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 973 (C.D. Cal. 2007) ("Indeed, Adidas has cited no case where a complaint has been dismissed for failure to state a claim merely because it requested damages in an amount that might hypothetically be excessive."); *see also In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 363 (C.D. Cal. 2013) ("[E]ven if a possible award against Toys will ultimately be unconstitutionally excessive, the certification stage is not the correct point in the proceedings to draw such a conclusion.").

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

3

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

### A. Plaintiffs State a Claim Under CEMA.

Under CEMA, a company is liable for "initiat[ing] the transmission, conspir[ing] with another to initiate the transmission, or assist[ing] the transmission, of a commercial electronic mail message" to a Washington resident that "[c]ontains false or misleading information in the subject line." RCW § 19.190.020(1)(b). Thus, under CEMA, "spammers" like Torrid "must use an accurate" and "nonmisleading" email subject heading, or otherwise face liability. *Brown*, 4 Wash. 3d at 588. As thoroughly pled by Plaintiffs, Torrid engaged in an extensive scheme whereby it used deceptive and misleading email subject headings to gin up consumer interest with fake information. Compl. ¶¶ 40-92. The Complaint easily survives this Rule 12 challenge.

### i. Plaintiffs Have Sufficiently Pled Torrid's Knowledge of Email Recipients' Washington Residency.

Torrid's assertion that Plaintiffs did not allege its knowledge of email recipients' Washington residence fails. Mot. 7-9. Defendant paints the pleadings as "conclusory" and "speculative[,]" all the while ignoring the well-worn rule that the Court must draw "all reasonable inferences in favor" of the pleadings. *Littlejohn*, 2024 WL 4451955, at *3. Contrary to Defendant's misreading of CEMA, Mot. 7, CEMA contains no "knowledge requirement." Commercial retailers who send deceptive marketing emails can be liable under CEMA if they have *reason to know* that the recipient is a Washington resident. Wash. Rev. Code Ann. § 19.190.020(1). That is the plain language of the statute.

The Complaint includes extensive allegations that as a "sophisticated commercial enterprise," Torrid knows of email recipients' Washington residency through, e.g., tying email addresses to online purchases; tracking IP addresses of devices who open its emails; the programs ("Cordial and MailGun") used to manage its email campaigns; purchasing consumer data from

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

4

brokers, who link emails to locations; and through "identity resolution" services that connect emails to location. Compl. ¶¶ 93-99.

Further, the standard under CEMA has not been "impermissibly invert[ed]" as suggested by Defendant. Mot. 7. Any attempt to shift the burden of proof by characterizing Plaintiffs' theory as requiring Defendant prove a negative, that they had "reason *not* to know[,]" is unsupported by the law. The Court of Appeals, in *Heckel*, rejected a similarly narrow interpretation, finding that the defendant had reason to know his emails were received by Washington residents based upon the particular circumstances of his mass email campaign, which may be established through various factual scenarios. *State v. Heckel*, 122 Wash. App. 60 (2004). Like the defendant in *Heckel*, Torrid conflates Plaintiffs burden to prove an element, with a requirement that it affirmatively disprove it. That is not the law. CEMA requires Plaintiffs to establish that Torrid possessed some identifiable basis for inferring Washington residency, not that *Torrid* prove it *lacked* such basis. Torrid's articulation of the pleading standard reflects a fundamental misunderstanding of the statutory framework.

At the pleading stage, Plaintiffs have alleged more than enough to infer knowledge under the statute. *See also FullBeauty*, 2026 WL 395677, at *3 ("*FullBeauty* cites no authority that would permit the Court to disregard the allegations of the operative pleading, to draw inferences against *Kempf*, or to consider contradictory facts or technological information outside the Amended Complaint."). In fact, Plaintiffs have plausibly pled Torrid's "reason to know" *and* actual knowledge of the Washington residency of email recipients. *First*, Plaintiffs allege that Torrid is "engaged in persistent marketing through mass email campaigns across the United States," the volume of which puts it "on notice" that Washington residents receive its emails. Compl. ¶¶ 93-94. Torrid's "notice" of recipients' residency *is* the "reason to know" that information, contrary to

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

5

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Torrid's assertions otherwise. Mot. 8, 12-15. *Second*, Plaintiffs have pled that Torrid uses "Cordial and MailGun" to manage these mass email campaigns—programs which can "ingest precise geographic data into consumer profiles"[2] and provide "IP based geolocation" from "delivery, opens, clicks, headers, and logs."[3] Compl. at ¶¶ 96-97. An allegation of *actual knowledge*. These particularized pleadings go straight to the question of Torrid's knowledge of email recipients' residence—thus reaching (even exceeding) the plausibility threshold.

Moreover, Plaintiffs specifically allege numerous other means by which Torrid could identify the location of email recipients—namely "IP addresses," "commercial data brokers," "identity resolution" services—buoyed by the "highly probable" reality that "a seller of Torrid's size and sophistication employs not just one, but several means of tying consumers' email addresses to their physical locations." *Id.* at ¶¶ 93-96, 98-100. Email marketing in 2026 is not a scattershot postal mailing that goes into the void—it applies sophisticated technology to target and reach a broad swath of consumers. Torrid ignores prevalent realities of modern society to fancy otherwise. Nevertheless, these realities are well-pled in the Complaint, and Plaintiffs are entitled to discovery on these capabilities to develop facts to rebut Torrid's suggestion that they had no reason to know they were spamming Washington residents.

Finally, CEMA provides for Torrid's constructive knowledge, where the "information is available, upon request, from the registrant of the internet domain name contained in the recipient's

---

[2] Cordial Integrates with Radar to Deliver Enhanced Geo-Location Customer Experiences, CORDIAL (Sept. 19, 2024), https://cordial.com/press/cordial-integrates-with-radar-to-deliver-enhanced-geo-location-customer-experiences/

[3] Mailgun Email Tracking, MAILGUN DOCS (last visited May 6, 2026), https://documentation.mailgun.com/docs/mailgun/user-manual/tracking-messages/tracking-messages (describing tracking of delivery, opens, click events, and log-based event data); *see also* How to Know Where an Email Was Sent from Using Mailgun, AEROLEADS (Mar. 16, 2026), https://aeroleads.com/blog/know-where-email-was-sent-from-using-mailgun/ (explaining that email headers and logs include IP address data from which sender location can be ascertained).

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

6

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

electronic mail address." RCW § 19.190.020(2). CEMA provides for such constructive knowledge, *id.*; Plaintiffs have pled Torrid's constructive knowledge, Compl. ¶ 100; and all reasonable inferences from these pleadings must be drawn in Plaintiffs' favor. *Littlejohn*, 2024 WL 4451955, at *3. Knowledge is a question ill-suited for resolution at the early stage of proceedings because it is a highly fact-specific determination. *See, e.g.*, *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) ("Questions involving a person's state of mind, *e.g.*, whether a party knew or should have known of a particular condition, are generally factual issues inappropriate for resolution by summary judgment."). The Court should ignore Torrid's endeavor to evade discovery of the other means by which it might have known or had reason to know where the recipients of its emails reside, including Plaintiffs.

The allegations made in the Complaint are more than enough to allege that Torrid knew or ought to have known it was emailing Washington residents.

### ii. Plaintiffs plausibly plead receipt of false or misleading subject lines.

Torrid devotes just three paragraphs to its argument that Plaintiffs have "failed" to plead its email subject headlines were false or misleading under CEMA—a meager showing that, itself, reflects the feebleness of Defendant's assertions. Mot. 9-10. In fact, the Complaint alleges multiple examples of spam emails sent by Torrid that contain "false" *and* "misleading" representations in the subject line. RCW § 19.190.020(1)(b). Under CEMA, a company is liable for "initiat[ing] the transmission, conspir[ing] with another to initiate the transmission, or assist[ing] the transmission, of a commercial electronic mail message" to a Washington resident that "[c]ontains false or misleading information in the subject line." RCW § 19.190.020(1)(b). Of course, this language undermines Torrid's proposition that Plaintiffs must demonstrate objectively false statements to plead its liability under CEMA. *See* Mot. 8-10. In fact, under CEMA, "spammers" like Torrid

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

7

"must use an accurate" and "nonmisleading" email subject heading, or otherwise face liability. *Brown*, 4 Wash. 3d at 588. A statement may be literally true but nevertheless actionably misleading if it is "likely to mislead a reasonable consumer." *Young v. Toyota Motor Sales, U.S.A.*, 442 P.3d 5, 9 (Wash. Ct. App. 2019) (internal quotation marks omitted). Whether a representation is false or misleading is a question of fact unsuited for decision on a motion to dismiss. *See Harrington*, 2025. WL 3677479, at *1 & n.3. Even taken on their own terms, Torrid's no-falsity arguments do not entitle it to dismissal.

At bottom, Torrid's primary contention appears to be that its announcements of imminent deal closures were not literally false at the time they were made. *See* Mot. 9 (arguing Plaintiffs do not plausibly plead "falsity" because "Plaintiffs do not allege any facts to suggests that the emails they received contained false or misleading information ***at the time they were sent***.") (emphasis in original); *see id.* at 8-10. But, as explored at length in the Complaint, *see* Compl. ¶¶ 41-92, they were plausibly misleading. Indeed, the Complaint is littered with spam emails sent by Torrid that contain "false" *and* "misleading" subject lines. RCW § 19.190.020(1)(b). Begin with the actually false subject line: on September 14, 2025, Torrid sent two emails telling consumers that it was the "LAST DAY for 50% off reg. price, including NEW!" and that the "Fall Fashion Event ends TONIGHT 🔔 [.]"*Id.* ¶ 78. Then, the very next day—further advancing the scheme—Torrid sent consumers another marketing email announcing, "SURPRISE! A treat: 50% off new, EXTENDED! 🍭 " *Id*. ¶ 79. Now, Torrid's lawyers claim the September 14 email subject lines did not say what they clearly said—that the consumer could only receive 50% off that day. *See* Mot. 9. Torrid's marketers understood precisely what was communicated by the September 14 emails when it declared that the promotion had been "extended[.]" Compl. ¶ 82. Thus, the September 14 announcements were simply a repeat of the same "email scheme" Torrid relentlessly

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

8

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

carried out to "compel consumers to purchase its products." *Id.* ¶ 40.

This strategy is exposed by two July 27, 2025 emails Torrid sent to consumers warning them it was the "LAST DAY" and "FINAL HOURS" for the "Torrid Cash After Party!" Compl. ¶ 63. Consistent with its usual practice, just one day after the sale was supposed to end, Torrid announced the sale had been "EXTENDED 1 More Day + a New FESTI Drop!", once again demonstrating "false or misleading statements" within its July 27, 2025 email subject lines. *Id*. ¶102. Not so, says Torrid. Following Defendant's logic: sometime between the July 27 and 28 emails (presumably in the early morning hours of July 28) the company simply made a "decision to extend or reintroduce [the] promotion[.]" Mot. 10.

Torrid's defense here is a wholly factual argument that has no place in a Rule 12(b)(6) motion. While Torrid's proffered factual scenario strains credibility, discovery and trial on the merits shall ferret out the plausibility of such explanations. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible.*" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). Torrid's arguments do nothing to undermine the facial plausibility of the conclusion that sophisticated online marketers do not conceive, implement, and market significant promotions in less than a day's time. That would be surprising if it were true—much more surprising than such a marketer's deployment of well-documented, well-studied marketing tricks. And anyway, construing the Complaint under Torrid's suggested interpretation—which repeatedly pleads that Torrid's emails are part of a "scheme," "pattern," "practice," or "strategy" to lure consumers in through false-time scarcity claims (Compl. ¶¶ 40,

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

41, 42, 64, 82, 91)—would contravene the standard requiring that reasonable inferences be drawn in favor of Plaintiff, not Defendant. *See U. S. Fire Ins. Co. v. Hawaiian Canoe Racing Ass'ns*, 424 F. Supp. 3d 1061 (2019).

The theory of deception is plainly articulated in the Complaint and buttressed by the discussion of materiality below. Consumers don't care about the name or other window dressing around a particular promotion; what they care about are *prices*. The Complaint pleads numerous examples of Torrid telling consumers it was the "LAST CHANCE" or "LAST DAY" to receive a certain *price* on its offerings when, in fact, it would offer the same *or better* prices only days later. *See, e.g.*, Compl. ¶¶ 42, 44, 49, 55-56, 60-62, 66-69, 71-81, 83, 85-90, 103-106. Despite Torrid's attempt at semantic maneuvering, the terms "last chance"[4] and "final hours" have specific meaning; they mean the end. Assuming, *arguendo*, there is some leeway in the terms' literal meaning, CEMA encompasses *both* false and "misleading" representations, which—as described *supra*—turn on whether the email sent would lead the recipient to believe it was the "last" and/or "final" opportunity to take advantage of the promotion. Thus, notwithstanding Torrid's efforts at obfuscation, it offers no ground to warrant the requested relief.

It's really not that complicated: Defendant uses its marketing email subject lines to create false or misleading urgency about sales that do not end on the day that they represent as the deadline. This marketing scheme operates to harm the average consumer. Compl. ¶ 37. Despite Torrid's effort to minimize its conduct, the pleaded emails amount to far more than mere "pricing practices" regarding the general "scope of [any] advertised sale". Mot. 16. If such structuring of promotional messaging did not tend to mislead reasonable consumers—if it did not make those

---

[4] *See* Merriam-Webster Dictionary (definition of "Last" is "as in final" https://www.merriam-webster.com/thesaurus/last (accessed on April 10, 2026)).

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

10

consumers "worse off" and Torrid better off, Compl. ¶ 38—it is difficult to understand why Torrid would not just announce the true duration and availability of its offers to begin with. In any case, this all grist for the fact-finder's mill. *See Harrington*, 2025 WL 3677479, at *1 & n.3. On the pleadings, Torrid's self-favoring inference runs headlong into the standards applied to Rule 12(b)(6) motions, under which fact allegations are presumed true and all reasonable inferences are drawn in the pleader's favor. *Littlejohn*, 2024 WL 4451955, at *3. Torrid's cursory invitation to the Court to defy the governing standard and construe the well-pled facts *against* Plaintiffs should be rejected. *See id*. Specifically, the Court should reject Torrid's invitation to construe the pleadings against Plaintiffs in order to credit the illogical assertion that sophisticated online retailers conceive and market significant promotions in less than a day, thereby rendering prior representations of deal availability false. This alternative explanation has no basis in the Complaint. Nor is it plausible. Torrid is not entitled to dismissal on the pleadings.

Finally, much like the numerous misleading email subject lines Torrid spams Washington consumers with, its suggestion that *Scott v. Bloomingdales* applies here is likewise, misleading. 2026 WL 820600 (D. Md. Mar. 25, 2026). Washington courts have made clear that, in evaluating whether an email subject line violates CEMA, the inquiry is limited to the subject line alone and not expanded to include any purportedly clarifying or contextual information contained therein. "[T]he Act does not regulate the body of the e-mail, only the subject line." *State v. Heckel*, 122 Wash. App. 60, 73 (2004). Therefore, determining whether a subject line is misleading under CEMA "requires evaluating the subject line alone." *Brown v. Old Navy, LLC*, 4 Wash. 3d 580, 589 (2025). The only "absurdity" here, is Torrid's petulant response to the statute's consequences as applied to its conduct—and its self-serving request that this Court disregard settled Washington law, apply Maryland jurisprudence, and rewrite CEMA to impose requirements the Washington

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

11

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Legislature never enacted. Mot. 9.

### B. Plaintiffs' CEMA claims are not preempted by the CAN-SPAM Act.

Torrid, incorrectly, argues that Plaintiffs' CEMA claims are preempted by the federal CAN-SPAM Act, 15 U.S.C. §§ 7701–7713 ("Act"). *See* Mot. 10–22. The Act's plain text, its legislative history, the Ninth Circuit's decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), and cases decided before and after *Gordon* easily resolve Defendant's contention. The Court need look no further than the plain text:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity* **or** *deception in any portion of a commercial electronic mail message or information attached thereto.*

15 U.S.C. § 7707(b)(1) (emphases added).

Application of this plain text to CEMA is straightforward. CEMA prohibits sending commercial email that "[c]ontains false or misleading information in the subject line." RCW § 19.190.020(1)(b). By prohibiting "false or misleading" subject lines in commercial emails, *id.*, CEMA "prohibits falsity or deception" in some part of or information attached to commercial emails. 15 U.S.C. § 7707(b)(1). By its plain terms, therefore, the Act does not preempt Plaintiffs' CEMA claims. Additionally, this "narrow" textual preemption analysis is "guided" by "a presumption against supplanting the historic police powers of the States" unless "that [is] the clear and manifest purpose of Congress." *Gordon*, 575 F.3d at 1060 (citations omitted). So, the idea is to construe the plain text and limit that construction to Congress' manifestly clear purpose.

The legislative history is clear. The Report of the Senate Committee on Commerce, Science, and Transportation described the effect of the Act as follows: "[A] State law requiring

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

12

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, *a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted*." S. Rep. No. 108-102, at 21 (emphasis added). The Report makes plain that Congress did not intend § 7707(b)(1) preemption to reach everything short of common law fraud, and indeed expressly endorses the very claims brought here: claims based on "a State law prohibiting … deceptive … subject lines … in commercial email" (*id.*)—directly contradicting Torrid's assertions that the CAN-SPAM exception applies only to claims sounding in common law fraud. Mot. 9-11, 16, 19-28, 31. Notwithstanding this legislative history, dissatisfied with the statute Congress passed and the President signed, Torrid asks this Court to rewrite the law. However, Congress made an apparent choice not to so limit the preemption exception in paragraph (b)(1), and that choice necessitates deference.

Indeed, court after court, before and after the Ninth Circuit's decision in *Gordon*, has concluded: statutory and common law claims attacking "falsity and deception" (§ 7707(b)(1)) broadly in commercial email are not preempted. Careful attention to *Gordon*'s actual reasoning and holding, rather than loose citation to its dicta, reveals why. The question was "[w]hether the exception language of § 7707(b) permits states to prohibit e-mail activity that is *not* unfair or deceptive." 575 F.3d at 1062 n. 21. Unsurprisingly, the answer was no. *Gordon* construes CEMA's "point of origin" provision, which prohibits "misrepresent[ing] or obscur[ing] any information in identifying the point of origin or the transmission path" of commercial email. RCW § 19.190.020(1)(a); *see Gordon*, 575 F.3d at 1058. The court found that CEMA's *point-of-origin provision*—not the statute itself—reaches "a vast array of nondeceptive acts and practices," including "unintentional clerical errors, imperfect representations, or immaterial misstatements."

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

13

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Id.* at 1059 (quotations and citation omitted).

The CAN-SPAM Act, by contrast, as interpreted in light of its text, structure, and purpose, *see id.* at 1061, does not authorize liability for "bare immaterial error," *id.* (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 359 (4th Cir. 2006)), or "immaterial inaccuracies or omissions." *Id.* at 1062. Rather, the Act restricts state regulation to the field of "traditionally tortious or wrongful conduct." *Id.* (quoting *Omega*, 469 F.3d at 354).

Under the *Gordon* court's materiality standard, the plaintiff's claims were preempted. The Ninth Circuit found "nothing inherently deceptive" about "fanciful" domain names, *Gordon*, 575 F.3d at 1062, 1064, and rejected an inapposite argument that defendant's or a client's full name must "expressly appear" in "from" fields. *Id.* If CEMA imposed such a "labeling requirement," the court explained, it "clearly" fell outside the exception from preemption. *Id.* So *Gordon* focused on the materiality of the alleged deception, and on that question, the plaintiff's claims failed.

*Gordon* and the cases applying it thus simultaneously explain the import of "traditionally tortious or wrongful conduct," 575 F.3d at 1062, in the preemption analysis, and give the lie to Torrid's characterization of Plaintiffs' CEMA claims as imposing "strict liability." *See* Mot. 9, 13, 16. The *Gordon* court invoked "traditionally tortious or wrongful conduct" to emphasize that the exception to CAN-SPAM preemption for state laws prohibiting "falsity *or* deception" does not encompass "liability for immaterial inaccuracies or omissions." *Id.* at 1062. It did not make any findings on, offer any analysis regarding, or even *mention* "common law fraud" in its discussion of the materiality requirement for the exception to CAN-SPAM preemption. *See generally Gordon*, 575 F.3d 1040.

Thus, under the Ninth Circuit's governing decision in *Gordon*, not the Fourth Circuit's decision in *Omega* (Mot. 12-13), to merit preemption a defendant must simply show it didn't do

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

14

anything *wrong*, in light of the state-law standard to be applied to its conduct, viewed against the backdrop of what has traditionally been considered wrongful, as stated in *Heckel*:

> The only burden [CEMA] places on spammers is the requirement of truthfulness, a requirement that does not burden commerce at all but actually facilitates it by eliminating fraud and deception. Spammers must use an accurate, nonmisleading subject line. . . . While spammers incur no costs in complying with the Act, they do incur costs for noncompliance, because they must take steps to introduce forged information into the header of their message.

143 Wash. 2d at 836-37.

### i.  Torrid's deceptions are more than bare immaterial errors.

To survive CAN-SPAM preemption, therefore, Plaintiffs need only show some degree of materiality. *See Gordon*, 575 F.3d at 1061. The only question is whether it is "apparent from the face" of Plaintiffs' Complaint, *Sams*, 713 F.3d at 1179, that the misrepresentations they complain of are merely "bare immaterial error[s]." *Gordon*, 575 F.3d at 1061 (quotations omitted). It is not. Plaintiffs are not complaining of "fanciful" domain names or "from" fields that fail an invented "labeling requirement." *Id.* at 1063–64. To the contrary, Plaintiffs complain of Torrid's barrage of emails laden with false subject lines—*i.e.*, its false time-scarcity tactics—that are plainly material to the behavior of ordinary consumers. If they were not, Torrid wouldn't invest resources to deploy them in the first place.

As alleged, "[f]alse time scarcity claims [] *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*." Compl. ¶ 37. As one report cited in the Complaint concludes, "[f]alse scarcity claims are psychologically effective[,] [a]s 'considerable evidence' suggests, 'consumers react to scarcity and divert their attention to information where they might miss opportunities.'" Compl. ¶ 34 (citing U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and*

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

15

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Consumers* 27 (2022)). Specifically, one study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* ¶ 38; *see Littlejohn*, 2024 WL 4451955, at *3 (fact pleadings "accept[ed] as true" with "reasonable inferences [drawn] in favor" of Plaintiff).

All of this accords with the well-established federal law of materiality, not to mention common sense. "Whether in tort or contract law," materiality focuses on "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Kousisis v. United States*, 145 S. Ct. 1382, 1396 (2025) (applying wire fraud statute). A fact is material "if a reasonable person would attach importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient would likely deem it important." *Id.* (citing *inter alia* Restatement (Second) of Torts § 538 (Am. Law Inst. 1977)). Representations about the timing and availability of sales, discounts, and other special offers are, minimally, representations about prices. If a consumer receives an email asserting " ⏰'s almost up! Torrid Cash ends TOMORROW[,]" a particular product, the consumer must decide whether to take advantage of the deal by purchasing that day, after which she loses the opportunity. Compl. Ex. A; *see id.* at ¶¶ 41-92. Price is obviously a material fact—perhaps *the* material fact—affecting the behavior and "decision-making" of consumers. *See* Compl. ¶¶ 32-40. If a consumer is in the market for a product or products she believes will cost her more tomorrow, she will naturally "attach importance," *Kousisis*, 145 S. Ct. at 1396, to the fact that the price will be less if she buys it today.

As for common sense, Torrid's argument flies in its face. Defendant is a "sophisticated commercial enterprise" that has "engaged in persistent marketing through mass email campaigns across the United States[.]" Compl. ¶ 93. Its email marketing platforms ("Cordial and MailGun") enable it to, *inter alia*, track how many recipients engage with its marketing materials and to what

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

16

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

extent. *See id.* ¶ 97. And email subject lines offer limited space within which Torrid can communicate "above the fold" messages that come to consumer attention even if the emails are immediately deleted or their contents ignored. Why, then, would Torrid choke its consumers' inboxes with email after email announcing " USE IT OR LOSE IT 💰 [,]" or "Final hours!" or "LAST CHANCE," if those representations constitute mere immaterialities? A plausible answer (indeed the *only* plausible answer) is, of course it would not. Torrid would not waste valuable marketing dollars on marketing messages designed to gain consumer attention unless the strategy, in fact, worked. And Torrid's false-urgency tactics work because they exploit well documented features of consumer psychology and behavior. *See id.* at ¶¶ 41-92. In other words, Torrid's tactics work because they misrepresent facts to which consumers "attach importance." *Kousisis*, 145 S. Ct. at 1396. Nothing in the text of the CAN-SPAM Act, nor *Gordon*, requires more to avoid preemption.

Torrid's arguments to circumvent this basic conclusion fall short. For example, Defendant argues Plaintiffs cannot show materiality because they do not allege "reliance on the truth" of the misrepresentation. *See* Mot. 17. This argument mistakes materiality for reliance, which is not a requirement here. *See infra* II(B)(ii). In assessing the former, the question is not whether any particular Plaintiff changed their behavior in response to any particular email, but whether Torrid's misrepresentations would have an "effect on the *likely* … behavior" of its recipients. *Kousisis*, 145 S. Ct. at 1396 (emphasis added); *see also id.* ("[A] misrepresentation is material if a reasonable person *would attach* importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient *would likely* deem it important." (emphasis added)). And, as shown above, reasonable consumers attach importance to the price of consumer goods.

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

17

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

For its continued sweeping proposition that statements creating false urgency are not material, Mot. 13-17[5], Torrid cites a decision from the Washington Court of Appeals, without meaningful analysis, that representations about raffle tickets "going fast" did not misrepresent "something of material importance." *Brummet v. Washington's Lottery*, 288 P.3d 48, 55 (Wash. Ct. App. 2012). But *Brummet* is readily distinguishable. To nonspecifically represent that certain widgets are "going fast" does not in itself say anything about how many widgets remain, or for how long consumers can expect those widgets to remain available for sale. If, by contrast, the *Brummet* defendant had used Torrid's tactics and represented that the raffle "expires tonight[,]" Compl. Ex. A at 1, when it did not, that would be representing urgency "when in fact there is no urgency," making it actionably deceptive. *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 19 (Wash. Ct. App. 2007) ("The increasingly urgent tone ('ATTENTION!') and message ('ACTIVITY PENDING TEN (10) days') [of defendant's dunning letters] suggests that the recipient's situation is becoming worse with each passing day when in fact there is no urgency."). More importantly, the Washington Supreme Court has rejected this very contention. *See Brown*, 567 P.3d at 47 (finding Washington residents "depend on" certain factual representations "in making their consumer decisions," including representations about "the duration or availability of a promotion.").

---

[5] To support its argument, that CEMA's focus on subject lines render it subject to preemption, Torrid relies on cases that do not even mention CEMA. Mot., 17-18. *See Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1418 (2014) (construing Cal. Bus. & Prof. Code § 17529.5); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (analyzing Cal. Bus. & Prof. Code § 17200 in the context of product labeling) and *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025) (addressing falsity under federal securities law and applying a context-dependent reasonable investor standard). Likewise, *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000 (N.D. Ill. 2011) is concerned an Illinois law and there were no allegations that false or misleading information appeared in the subject lines of the emails at issue. And *Shellenberger v. AIG WarrantyGuard, Inc.*, 2025 WL, 732874, at *6 (W.D. Wash. Feb. 3, 2025) analyzes a context-driven reasonable consumer standard within CPA framework. These cases are inapposite.

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Recent decisions in this District affirm the application of the CAN-SPAM exception to CEMA in this context. *Nike, Inc.*, 2026 WL 100731, at *2 (citing *Gordon*, 575 F.3d at 1062). Here, as in *Nike*, Plaintiffs allege a "pattern of Nike sending Washington residents commercial e-mails with subject lines containing allegedly false or misleading information regarding the duration or availability of sales promotions, falling directly under CEMA's subject-line provision which fits under the rights reserved to states within the CAN-SPAM Act's savings clause." *Id. See also Harrington*, 2025 WL 3677479, at *1 (CEMA not preempted by CAN-SPAM Act); *FullBeauty Brands*, 2026 WL 395677, at *4-*5 (same); *see also Ulta*, 2026 WL 571122 *3. These cases are recent, on point, and dispositive.

Torrid's attempt to distinguish *FullBeauty*, *Harrington* and *Nike* misses the forest for the trees. While the decisions acknowledged that a different CEMA provision was at issue in *Gordon*, they cited to the Ninth Circuit's decision in support of the core finding that a "state law that prohibits 'fraudulent or deceptive headers, subject lines, or content in commercial e-mail[s] would not be preempted' by the CAN-SPAM Act." *Nike*, 2026 WL 100731, at *2 (quoting *Gordon*, 575 F.3d at 1062), as well as the central holding that "because CEMA's subject-line provision prohibits only 'falsity' or 'deception' in the subject-line of commercial e-mails, it 'falls squarely within this area reserved to the States[.]'" *Id.* (quoting *Harrington*, 2025 WL 3677479, at *1). Moreover, the court's finding in *Harrington* that CEMA liability does not encompass "mere puffery," but looks to "representations of fact–like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts," *id.* (quoting *Brown*, 4 Wash. 3d at 589 & 594), is just another way of saying that it does not hold defendants liable for "immaterial inaccuracies or omissions." *Gordon*, 575 F.3d at 1062.

In any event, materiality is a complex mixed question of law and fact "typically …

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

resolved by juries." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995). Any doubts as to the materiality of Torrid's misrepresentations are to be doubly resolved against Torrid: once because it is not Plaintiff's burden to plead materiality, but Torrid's burden to show Plaintiffs have pleaded themselves out of court with immaterialities, *see Sams*, 713 F.3d at 1179; and twice because Plaintiffs should be afforded the benefit of fact and expert discovery to demonstrate the plausible inference that Torrid's misleading subject lines impact consumer behavior. And anyway, at this stage, the Court must draw reasonable inferences in Plaintiffs' favor. *See Littlejohn*, 2024 WL 4451955, at *3. Plaintiffs' claims under CEMA stand.

### ii. Torrid's non-existent preemption standard does not apply.

Torrid constructs a made-up, tortious standard, purportedly under *Gordon*, to assert that Plaintiffs' CEMA claim must meet the elements of a CAN-SPAM Act claim. Mot. 13-19. Nowhere in *Gordon* does the court state that the Act's preemption exception requires an affirmative claim under the CAN-SPAM Act. *See generally Gordon*, 575 F.3d 1040. Rather, the court's analysis of the CAN-SPAM exception for state laws prohibiting "falsity or deception" spam email found that those terms incorporate a materiality element, one that is plainly invoked under CEMA and Plaintiffs' claims here. *See* supra Section II(A)(ii).

Having invented this non-existent "common law fraud" pleading requirement, Torrid next suggests that Plaintiffs' CEMA claim must meet the elements of common law fraud. Mot. 13-19. But the Ninth Circuit's reference to "traditionally tortious or wrongful conduct" never once invokes the elements of common law tort theories, like, *e.g.*, fraud.[6] As described *supra*, Section

---

[6] *See, e.g.*, *Asis Internet Servs. v. Subscriberbase Inc.,* 2009 WL 4723338, at *3 (N.D. Cal. Dec. 4, 2009) (no "need to plead reliance and damages in order to avoid preemption"); *Asis Internet Servs*, 617 F. Supp. 2d at 993 ("declin[ing]" to "restrict . . . 'falsity or deception' to encompass

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

20

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

II(A)(ii), *Gordon* and its progeny stand for the incorporation of *materiality* under common law tort theories to invoke preemption. They do not stand for an explicit adoption of the elements of a *different* law or standard other than that invoked by the exempted state law itself. *Gordon*, at 575 F.3d at 1063. Rather, as described by the court, the CAN–SPAM Act "left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." *Id.* So, the *states* get to enact laws that *extend* traditional prohibitions against fraud *and* deception, the latter, of course, being substantively discrete from the former. Otherwise, as the court in *Consumerbargaingiveaways* reasoned:   use of the disjunctive references to "falsity *or* deception" in fact, "suggest[s] [a] broader application," not one "limited *just* to common-law fraud and other similar torts." 622 F. Supp. 2d at 942.

Torrid is wrong that Plaintiffs must plead "claims in the vein of fraud or deceit… *e.g.*, materiality, reliance, actual injury, and deceptive intent" to "survive preemption." Mot. 12. Further, Plaintiffs are not required to demonstrate "scienter," a requirement under *fraud* claims.[7]

only common-law fraud"); *Consumerbargaingiveaways*, 622 F. Supp. 2d at 944 (same); *Smith v. Anastasia Inc.,* 2014 WL 12577598, at *2–3 (S.D. Cal. Sept. 15, 2014) (same); *Wagner v. Spire Vision,* 2014 WL 889483, at *3-4 (N.D. Cal. Mar. 3, 2014) ("showing of reliance and damages" is "not necessary"); *Hypertouch, Inc. v. ValueClick, Inc.,*192 Cal. App. 4th 805 Cal. Rptr. 3d 8, 27 (2011) (same); *Hoang v. Reunion.com, Inc.,* 2010 WL 1340535, at *4 (N.D. Cal. Mar. 31, 2010) ("not required" to "allege he relied to his detriment" on false or misleading statement).

[7] Torrid's effort to invoke common law fraud turns on misrepresenting the *Gordon* decision and relying on cases about fraud. Mot. 12-19 (citing, *e.g.*, *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wash. 2d 157, 166-167 (2012) (under *fraudulent inducement* claim, court found the alleged misrepresentations "*not relevant*"); *Martin v. Miller*, 24 Wash. App. 306, 309 (1979) (on *fraud claim*, plaintiffs must show that "representations were material to the plaintiffs' decision to enter into . . . agreement"); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 (9th Cir. 2023) (quoting the "procedural history" portion of a decision regarding a False Claims Act challenge, where the jury was asked to assess, *inter alia*, "whether 'the false or fraudulent aspect of the claim' was 'material to [the plaintiff's] decision-making'"); *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009) (on *fraud* claim, allegation not sufficient to meet *inapposite* reliance requirement); *Haskins*

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

21

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*See Wright v. Lyft, Inc.*, 406 P.3d 1149, 1153–55 (Wash. 2017) (elements of CPA and CEMA claims do not include intent).

Nonetheless, a demonstrably reasonable inference to draw from the pleadings that Torrid asserted "LAST CHANCE", "Gone for good at midnight 🌙 ", and "FINAL HOURS" as to deals it continued the next day, or shortly thereafter, is that Torrid *knew* the deal would be "extended." Compl. ¶¶ 41-92. Otherwise, how could it systematically implement the very deals it was advertising, and then advertise those deals to consumers across the U.S.? *Littlejohn*, 2024 WL 4451955, at *3 (fact pleadings "accept[ed] as true" with "reasonable inferences [drawn] in favor" of Plaintiff). Of course, even under heightened fraud claims—*not applicable* here—one need only plead a "strong inference" of knowledge. *See, e.g.*, *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011). This makes sense: at the pleading stage, a plaintiff has little-to-no way of accessing what the defendant *knows*. So Torrid is wrong even under the standard for pleading fraud, an inapposite standard on Plaintiffs' CEMA and CPA claims, which do not require intent. *Wright*, 406 P.3d at 1153–55.

And again, because *Gordon* and the CAN-SPAM exception to preemption *do not impose* common law fraud elements on CEMA, there is no requirement to plead reliance, here. Torrid misses the point in its argument that cases like *Asis Internet Servs. v. Vistaprint USA, Inc.* and *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, are distinguishable. There, the *Vistaprint USA, Inc.*, court was not looking to the pleading requirements of any state law when it construed *congressional* language for *exempting* state statutes from preemption. 617 F. Supp. 2d

---

*v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016)( *fraud* claim, allegation not sufficient to meet *inapposite* reliance requirement); and *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782 (9th Cir. 2018) (*fraud* based claim, allegation insufficient to meet reliance recruitment)).

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

22

989, 993 (N.D. Cal. 2009); 622 F. Supp. 2d 935, 944 (N.D. Cal. 2009). And as it found:

> The very terms of the savings clause exempt laws that proscribe "falsity or deception" in email advertisements, and although the terms are not defined in the Act, this Court finds they should be applied more broadly than just to common-law fraud claims. After all, Congress explicitly used the term "fraud" in the next provision of the preemption clause, yet did not in the savings clause.

*Id.* at 994 (citation omitted). As amply described *supra*, *Gordon*'s focus on materiality aligns with these courts' findings that the exception for "falsity or deception" prohibitions does not equate to "common law fraud," a term never once referenced by *Gordon*—notwithstanding Torrid's considerable effort to assert otherwise.

Nor should the Court oblige Torrid's request to read into *Gordon* the findings and conclusions reached in *Omega*. Throughout its brief, Torrid regularly quotes its favored (*Omega*) opinion while laxly associating it with *Gordon*. *See, e.g.*, Mot. 5, 12, 14,-16, 17-19, 21. And while the Ninth Circuit extensively reviewed the decision by its sister circuit court, it did not wholly adopt the opinion or align with statements regarding, *e.g.*, reliance under fraud and "strict liability standard[s]" that Torrid attempts to associate with *Gordon*. Indeed, *Gordon* never mentions fraud "reliance" or "strict liability". *Compare* Mot. 5, 12, 14,-16, 17-19, 21, *with Gordon*, at 575 F.3d at 1061-65.

Neither the CAN-SPAM Act nor *Gordon* require Plaintiffs to plead common law fraud for their CEMA claims to avoid preemption, and because their claims allege *material* harm, they are exempted.[8]

---

[8] Buried in its argument about federal preemption and common law pleading standards, Torrid slips in an argument about injuries cognizable under the CPA. *See* Mot. 19. As discussed further below, *see* Section II.C, *infra*, receipt of a CEMA-violating email is itself an injury cognizable under the CPA.

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

23

### C.  Plaintiffs' CPA claim survives.

Finally, Torrid, speciously, contends that Plaintiffs have failed to plead all the elements of a CPA claim. Mot. 22-23. A violation of CEMA is necessarily a violation of the CPA. Wash. Rev. Code Ann. § 19.190.030; *see also Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1003 (W.D. Wash. 2019); *Heckel*, 24 P.3d at 407 ("RCW 19.190.030 makes a violation of the Act a per se violation of the Consumer Protection Act (CPA), chapter 19.86 RCW."). Thus, the CPA claim survives because the CEMA claim survives. The *Montes* opinion, recently issued by the Washington Supreme Court, offers no support to the contrary.  *Montes* concerned only a standalone CPA claim. *Montes v. SPARC Grp*. LLC, No. 104162-4, 2026 WL 900481, at *2 (Wash. Apr. 2, 2026). The controlling opinions on how CEMA and the CPA work together are *Brown* and *Lyft – Montes* does not touch, abrogate, overrule, or even cite those cases at all. *Wright v. Lyft, Inc.*, 189 Wash. 2d 718, 732, 406 P.3d 1149, 1155 (Wash. 2017) ("We conclude that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law."); *see also Old Navy*, 567 P.3d at 45 ("The legislature understood that these two statutes work together: it made CEMA violations per se CPA violations.").

As Plaintiffs' CEMA claims survive for the reasons given above, so too do their CPA claims.

### III.    <u>CONCLUSION</u>

The Court should deny Torrid's motion to dismiss.

*[Counsel signatures to follow on next page.]*

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

24

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Date:   May 13, 2026                          Respectfully submitted:

                                              */s/ Lynn A. Toops*
                                              Lynn A. Toops, *pro hac vice*
                                              Natalie A. Lyons*
                                              Ian R. Bensberg*
                                              Leslie D. Wine*
                                              **COHENMALAD, LLP**
                                              One Indiana Square, Suite 1400
                                              Indianapolis, IN 46204
                                              Tel.: (317) 636-6481
                                              ltoops@cohenmalad.com
                                              nlyons@cohenmalad.com
                                              ibensberg@cohenmalad.com
                                              lwine@cohenmalad.com

                                              *I certify that this memorandum contains 7,783 words in compliance with the Local Civil Rules.*

                                              */s/ Samuel J. Strauss*
                                              Samuel J. Strauss, WSBA No. #46971
                                              Raina C. Borrelli*
                                              **STRAUSS BORRELLI PLLC**
                                              980 N. Michigan Avenue, Suite 1610
                                              Chicago, IL 60611
                                              Telephone: (872) 263-1100
                                              Facsimile: (872) 263-1109
                                              sam@straussborrelli.com
                                              raina@straussborrelli.com

                                              Gerard J. Stranch, IV*
                                              Michael C. Tackeff, *pro hac vice*
                                              Andrew K. Murray*
                                              **STRANCH, JENNINGS & GARVEY, PLLC**
                                              223 Rosa L. Parks Avenue, Suite 200
                                              Nashville, TN 37203
                                              Tel.: (615) 254-8801
                                              gstranch@stranchlaw.com
                                              mtackeff@stranchlaw.com
                                              amurray@stranchlaw.com

                                              *Attorneys for Plaintiff*
                                              ***Applications for admission *pro hac vice* forthcoming**

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

**CERTIFICATE OF SERVICE**

I, Lynn A. Toops, hereby certify that on May 13, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 13th day of May, 2026.

/s/ Lynn A. Toops
Lynn A. Toops (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

26